Lake County *ex rel. v.* T. O. Morris *et al.*

(*Jackson,* April Term, 1930.)

Opinion filed May 31, 1930.

PIERCE & FRY, for complainant, appellant.

MORRIS & MORRIS and F. J. SMITH, for defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

These suits were brought against a number of property owners to collect drainage assessments and to sell the several tracts of land involved for payment of the respective assessments levied against them. A sale was decreed in each case and duly undertaken by the Clerk and Master who later filed his report, showing bids for most of the tracts exposed to sale, but further showing, as to a few, no bids. As to the tracts upon which there were no bids, the orders of sale were renewed. As to the other tracts, the sale to the several bidders was confirmed but the decree vested title in the purchasers subject to the provisions of chapter 3 of the Acts of 1929, to which Act further reference will be made.

Certain of the defendants filed the records for writs of error and Lake County and others appealed from the chancellor's decrees.

The only criticism of the chancellor's decrees proper by defendants is that there was no evidence in either case to sustain such decrees. The defendants had filed answers denying that the assessments had been duly levied and that they were due and unpaid. The complainants filed lists in each case, certified by the Trustee of Lake County,

showing the lands upon which said assessments were delinquent and the names of the owners thereof according to the assessment roll on file in his office. There was no other proof from either side.

The Free Bridge Drainage District, including the lands here involved, was organized under chapter 61 of the Acts of 1915, amending chapter 185 of the Acts of 1909, the original Drainage Act, in so far as the earlier Act provided for the organization of drainage districts when the land lay in more than one county. The land comprising this district lies both in Obion County and in Lake County. Under the amendatory Act of 1915, in such circumstances, the county court of any of the counties in which the land is located is authorized to establish the district, without the necessity of application to the county courts of all the counties in which the lands to be included in the district lie.

Section 32 of chapter 185 of the Acts of 1909 provides that the county court clerk of the county in which a particular drainage assessment is levied shall make out a book showing the tracts of land involved, the amount of the assessments, etc., after the manner of a tax book. The book is then turned over to the county trustee and he is charged with collection of the assessments.

Section 33 of chapter 185 of the Acts of 1909 makes the assessments liens on the lands charged and provides for the enforcement of such liens upon delinquency by bills in the chancery court in the name of the county, and continues:

"When it is desired by the Board of Directors, or other interested party entitled to sue, to file such bill, the county trustee, upon request, shall make out a statement or list, showing all the lands upon which such assess-

ments are so delinquent, and the names of the owners thereof, as appears upon the drainage assessment book or showing any tract or tracts assessed to unknown owners, if such be the case, and certify as trustee to the correctness of such statement or list as the same appears upon said book, and in such chancery suit such certified statement or list shall be *prima-facie* proof of the facts so certified to and that such assessments are delinquent and sufficient proof to authorize a decree of sale in the absence of rebutting proof of the facts shown by such certified statement.''

Section 3 of chapter 61 of the Acts of 1915 provides, the lands in the drainage district lying in two counties, that the assessments shall be levied in the court of the county where the petition is filed and that the clerk of that court shall make out the drainage assessment book in which the assessment for the entire district shall appear; ''and he shall then copy so much of the drainage assessment book as contains the assessment of lands in any other county than that where the petition was filed and proceeding is pending, certify under seal that it is a correct copy of that portion or part of such book, and transmit or deliver it to the trustee of such other county, taking his receipt therefor.''

Section 4 of the amendatory Act contains this language:

''That it shall be the duty of the trustee of any county, in which part of the lands of such district lie, to receive the certified copy mentioned in section 3 of this Act, and to collect the assessments shown by the same, as now provided by said chapter 185, where the district lies entirely in one county, and to duly account for and pay over the same when collected.

█ The point of the defendants' argument is that the Act of 1915 contains no provision making a certified copy of the assessment list filed with the trustee of the county, other than the county in which proceedings to establish the district were instituted, *prima-facie* evidence that such assessments were delinquent and sufficient proof to authorize a decree of sale, etc. Therefore, it is said there wàs no evidence before the chancellor to justify a decree of sale.

We do not think this contention is sound. The title of chapter 61 of the Acts of 1915 is "A Bill to be entitled an Act to amend chapter 185 of the Acts of the General Assembly of 1909 (setting out the title of the former Act), so as to provide an additional method of proceeding in the establishment of levee and drainage districts, or drainage districts, where the lands to be included within the same are located in more than one county."

The effect of the Act of 1915 is thus necessarily limited by its title to amending the Act of 1909 only with respect to the method of *establishing* levee and drainage districts, or drainage districts, where the lands are located in more than one county. After such districts are established, the provisions of the Act of 1909 fix and define the powers, rights and obligations of these agencies. As a detail of establishing a district under the new method, the Act of 1915 provided for the making up, by the county court clerk of the county in which the petition was filed, of an additional copy of the assessment roll, in so far as it included lands in another county, and the filing of such copy with the trustee of such other county. We think such lists so filed had all the force and effect of the lists called the "Drainage Assessment Book" filed

in the county in which the proceedings were instituted. Each list was the assessment roll of the particular county.

To give the Act of 1915 any other construction would carry that Act beyond the limits of its caption—would make the Act of 1915 amend the Act of 1909 otherwise than providing "an additional method of proceeding in the establishment of levee and drainage districts, or drainage districts."

In addition to the foregoing, Thompson's-Shannon's Code, section 5573, is that:

"Duly certified copies of all records and entries, official bonds, or other papers belonging to any public office, or by authority of law, filed to be kept therein, are evidence in all cases."

Under the Code section quoted, leaving out of consideration the Act of 1909, we are of opinion that a duly certified copy of delinquent assessments, taken from the roll on file in the office of the Trustee of Lake County, and authenticated by that official, was sufficient evidence to justify the decrees of the chancellor in the absence of any other proof.

The defendants' other assignments of error question the action of the chancellor in permitting the appeal herein and these assignments may be considered in connection with the appellants' contentions.

As authorized by section 27 of chapter 185 of the Acts of 1909 and by section 6 of chapter 61 of the Acts of 1915, bonds were issued to provide for the cost of the Free Bridge Drainage District project. Bonds of a drainage district are not general obligations of the county but are payable only by assessments levied and collected on lands within the designated district. The levy of any assessment for the payment of the same on any property,

real or personal, outside the designated district, is expressly prohibited by the Act of 1909.

Upon sale of land within a drainage district for delinquent assessments, under the procedure heretofore mentioned, section 33 of chapter 185 of the Acts of 1909 provided that the court should vest title in the purchaser and award him a writ of possession, subject to other assessments not due and unpaid. This section further provided that the owner of lands so sold should have two years from confirmation to redeem the same by paying into court the amount paid for the land by the purchaser, with interest to the date of redemption, and an additional sum of ten per cent of the purchase price.

Chapter 73 of the Acts of 1929 undertook to amend section 33 of the original statute by enacting that, upon such sale, the owner might remain in possession two years, before the purchaser could have a writ of possession, and that during said period of two years the owner was entitled to the rents and profits of the land. Also that the owner might redeem within the two years on the terms prescribed in section 33 of the Act of 1909, and adding the following:

" . . . provided, however, that if the said owner elects to, and does, within twelve months after such confirmation of sale, pay into the hands of the Clerk and Master one-fifth of the amount paid by the purchaser for said land together with one-fifth of the penalty of ten per centum and interest as hereinabove provided, and shall thereafter pay one-fifth of said amounts annually, his equity of redemption shall not expire until five years from the date of the confirmation of sale, and no writ of possession shall issue as long as said payments are being made, and the owner shall enjoy the rents and profits;

and if the amount of the purchase price of the land together with the penalty of ten per centum and interest at the legal rate, be paid within said five years in the way and manner above provided, the decree of confirmation shall be of no effect, and the title to said land shall be divested out of the purchaser and vested in the owner and his heirs and assigns; provided further, that the original owner shall have possession for agricultural, and all other purposes, except the removal of timber during the time allowed for redemption; and provided further, that all decrees of confirmation entered after the passage of this Act, regardless of when the sale has been had or may be had, shall be made subject to these rights of redemption and of possession, and shall recite the same in the decree. But any purchaser at a sale made previous to the passage of this Act, may, on application to the Court, be released from his bid."

As hereinbefore stated, the chancellor vested title in the purchasers in this case subject to the conditions set out in the proviso just quoted from the Act of 1929. The Act of 1929 was approved April 9, 1929, after the bonds here involved were issued, and indeed after the sale of the land herein was made, but before confirmation.

The appellants maintain that in giving this effect to chapter 73 of the Acts of 1929, the chancellor brought the Act into conflict with section 20 of Article I of the Tennessee Constitution and section 10 of Article I of the Federal Constitution forbidding any law impairing the obligation of contracts. One of the appellants herein appears to be the holder of bonds issued on account of this drainage district. The provision of the Constitution of the State and the provision of the Constitution of the United States with respect to laws impairing the

obligation of contracts are identical so that any question of the validity of a statute in this particular is a Federal question and the decisions of the Supreme Court of the United States are controlling.

Before referring to those decisions, however, we may advert to a decision of this court which is directly in point—*Greenfield* v. *Dorris,* 33 Tenn. (1 Sneed), 548.

Prior to chapter 121 of the Acts of 1850, at a sale under a trust deed, the entire and absolute estate vested in the purchaser and he became entitled to immediate possession and to enjoyment of the rents and profits of the land, subject to the owner's right to redeem. The Act of 1850 provided "that in all sales of real estate hereafter to be made under execution or deed of trust, which by existing laws is subject to redemption, if the debtor is permitted by the purchaser or his assignee to remain in possession, he shall not be liable for rent from the date of the sale to the time of redemption, and if the purchaser or assignee shall take possession under his purchase, upon the redemption by the debtor, he shall be entitled to a credit for the fair rent of the premises during the time they were in possession of the purchaser."

Considering the foregoing Act, this court held that, in so far as it related to sales under deeds of trust executed anterior to its passage, the Act was unconstitutional and void, as impairing the obligation of a contract. The court added that "as to mortgages and deeds of trust made since the law was passed, they will be construed and governed by it. For there is no question as to the power of the State to declare the force and effect of future contracts made and to be executed in it." *Greenfield* v. *Dorris, supra.*

In *Barnitz* v. *Beverly*, 163 U. S. 118, 41 L. Ed. 93, after a review of its earlier decisions, the Supreme Court of the United States said:

"A statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which extends the period of redemption beyond the time formerly allowed, cannot constitutionally apply to a sale under a mortgage executed before its passage."

In this case, the property was bid in at the foreclosure sale by the mortgagee for less than the amount of her debt.

In *Hooker* v. *Burr*, 194 U. S. 415, 48 L. Ed. 1046, the language just above quoted from *Barnitz* v. *Beverly* was set out and limited as follows:

"These remarks must be interpreted in the light of the facts of that case, and must be limited in their application to the parties to the mortgage contract whose rights are impaired by subsequent legislation. If the mortgage had been foreclosed, and the mortgagee had thereby realized his debt, principal and interest, in full, upon the sale, there can be no doubt that he would not have been heard to assert the invalidity of the subsequent legislation, nor would an independent purchaser at the sale have been heard to make the same complaint. Of course, this does not include the case of a mortgagee who purchases at the foreclosure sale, and bids a price sufficient to pay his mortgage debt in full with interest, and an action thereafter commenced against him to set aside the sale because it was made in violation of legislation subsequent to the mortgage. In such case we suppose there can be no doubt of the right of the mortgagee to assert, as a defense to the action, the unconstitu-

tionality of the subsequent legislation as an impairment of his contract contained in the mortgage. But it may be said that where the legal or equitable rights of a party are not in any way touched, and he is in no way injured, he cannot be heard to complain of the impairment of the obligation of his contract, as a mere abstract proposition.''

In *Hooker* v. *Burr,* at the foreclosure sale, the property brought more than the mortgage debt and the mortgagee was paid in full. The writ of error was sued out by an independent purchaser. As to the mortgagee, he was paid in full and the court referred to the familiar principle that he was not adversely affected by the statute changing the time for redemption. As to the purchaser, he had no connection with the mortgage, no contract of his was impaired by the legislation, and he had no standing to maintain a writ of error.

The principles announced in these cases are decisive. The only security of the bondholder or creditor here is the land. The land is not charged directly for the debt, as under a mortgage, but the land is charged with the assessments and the assessments are charged with the debt. See *Seibert* v. *United States,* 122 U. S. 284, 30 L. Ed., 1161.

Legislation which reduces the value of the plighted land in the market impairs the security for which the creditor had contracted—impairs the obligation of his contract. It is elementary that the remedy of a creditor cannot be so changed as to deprive him of substantial rights.

Now to apply the law stated to the facts of the cases before us. The bill in *Lake County, for use, etc.,* v. *T. O. Morris et al.,* merely averred that the 1927 assess-

ments were due and unpaid and it was necessary to sell the lands for the reason that there were outstanding bonds and coupons which were due and unpaid. There was no statement whatever of the amount of bonds and coupons that were due and unpaid and there was no proof as to such amount. It does not anywhere appear how many bonds were issued nor when they matured.

In *Lake County, for use, etc., et al.,* v. *F. J. Smith et al.,* The First National Company, a Missouri corporation, joined in the bill. It was averred that the assessments for 1925 and 1926, on some tracts for one year and on some tracts for both years, were delinquent "and in order to pay for said improvements, bonds were issued and sold and said improvements made." It was further stated that "The First National Company owns seven bonds of $500 each, issued by the Free Bridge Drainage District, and also owns $3240 of coupons issued by said Drainage District, and which are unpaid, and for that reason joins as party complainant and asks the court to enforce the lien as provided by law in such cases."

It will be observed the statement quoted is that $3500 of bonds, and $3240 of coupons, belonging to The First National Company are unpaid. There is no statement of the amount of bonds or coupons *due* and *unpaid.*

The reports of the Master show that upwards of $4300 were received from the sales in the two cases. The majority of the tracts, sale of which was sought in the bills, appear not to have been offered for sale. We take it, therefore, that the assessments on these tracts were paid after the bills were filed, bringing other money into court. So far as the records show, there may have been enough realized from the sales in the two cases to pay

every obligation of the Drainage District that was due and unpaid.

Appeals were prosecuted in these two cases by Lake County, for the use of the Free Bridge Drainage District and by The First National Company and by Wyllis K. Bliss, Trustee. So far as the records show, Bliss, Trustee, was an independent purchaser and has no standing to appear and question the validity of the Act of 1929. As to The First National Company, since it does not appear that the sales failed to produce sufficient to pay all its bonds and coupons that were due, it accordingly does not appear that said Company was adversely affected by the action of the chancellor in following the Act of 1929.

Chapter 73 of the Acts of 1929 cannot be applied to the prejudice of the rights of the holders of Drainage District bonds issued prior to the enactment of said statute. Unless it appears, however, that an application of this Act adversely affected such bondholders, they cannot complain.

For the reasons stated, the decrees of the chancellor are affirmed. The costs of this court are divided—one-half to each side.