STATE *et al. v.* ROWAN *et al.*

(*Jackson*, April Term, 1937.)

Opinion filed June 17, 1937.

614

FRANK M. GILLILAND and COSTEN & CRABTREE, all of Memphis, for University Club of Memphis.

JOHN R. GILLILAND, of Memphis, for intervening petitioners.

ROY H. BEELER, Attorney General, for the State.

JOHN BROWN, CHAS. M. BRYAN, and FRANK H. GAILOR, all of Memphis, for Shelby County.

K. C. LARKEY, WALTER CHANDLER, and WILLIAM GERBER, all of Memphis, for appellee City of Memphis.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This appeal involves thirteen suits for the State, County of Shelby, and City of Memphis, to recover taxes for the years 1925-1934, inclusive. The taxes were assessed on real property of the University Club of Memphis. That defendant has appealed from a decree in favor of the complainants for the amount of the taxes, interest, penalties, and costs.

Defendant University Club claims that it is an educational institution and that its property is accordingly exempt from taxation. This is the principal defense. Other defenses are made which will all be noticed in the opinion.

The University Club was incorporated under subsections (4) and (6) of section 2513 of Shannon's Code. Its charter recites that the particular purposes of the club are "to promote, encourage and foster the educational interests and social relations and the general welfare of

its members and the citizens of Memphis and Shelby County, Tennessee, and neighboring communities, and to acquire, hold and control such real and personal property as may be necessary for the accommodation, pleasure, convenience and entertainment of its members and the entertainment of visitors.''

The preamble to the constitution of the club is as follows:

''To foster a spirit of fraternity among university and college men, and to incorporate liberal culture and education and to effect united action in promoting the welfare of the community, the following constitution is adopted.''

The defendant club relies on section 28 of article 2 of the Constitution of Tennessee which, among other things, provides:

''All property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational,'' etc.

And defendant club further relies on the exemption from taxation contained in subsection 2 of section 2 of chapter 602 of the Acts of 1907, providing:

''All property belonging to any religious charitable, scientific, or educational institutions when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income.''

██ Neither its charter nor constitution is decisive of the liability of a corporation for taxation. The property of a corporation for which exemption is claimed

must be held and used for purposes purely or exclusively religious, charitable, scientific, literary, or educational in order to be exempt.

■ ■ If the property owner be a corporation for profit, or an individual, the property must be actually or physically used for one of the privileged purposes in order to be exempt. *Ward Seminary* v. *City of Nashville*, 129 Tenn., 412, 167 S. W., 113. If the property owner be a corporation organized for the general welfare, not only its property actually and physically used in one of the privileged purposes is exempt, but its investments, the income of which is devoted to the privileged purposes, are exempt. That is, unless the property in which the investment is made is used in secular business and competing with a like business that pays taxes to the State. *University* v. *Cheney*, 116 Tenn., 259, 94 S. W., 90; *M. E. Church, South,* v. *Hinton*, 92 Tenn., 188, 21 S. W., 321. No income-bearing property, apart from property physically employed in the activities of defendant club, is here involved.

■ When its freedom from taxation is to be determined by its actual and physical use, practically the same test is applied to property owned by a corporation for general welfare as is applied to property owned by a corporation for profit or to property owned by an individual. A somewhat more liberal construction is perhaps indulged in regard to exemptions to corporations of the former class but, generally speaking, the test is the same. *Memphis Chamber of Commerce* v. *City of Memphis*, 144 Tenn., 291, 232 S. W., 73.

■ If the property of either class of corporations is employed primarily and principally for secular pur-

poses, it cannot be held exempt from taxation. True we said in *State ex rel.* v. *Waggoner*, 162 Tenn., 172, 35 S. W. (2d), 389, 390, that "property of an educational institution may be regarded as used exclusively for educational purposes so long as the primary use is for such purposes, even though there be an incidental use for other purposes."

What, then, is the primary use of the property here involved? What is the incidental use?

The defendant club was organized in 1919. Its charter members were a group of leading citizens of Memphis. The original plan of those who organized the club was to confine its membership to university men. It was, however, found that there were not enough college men in Memphis available as members, to make the club successful, and the requirements for admission were relaxed.

When the club was first organized, an old residence, known as the Hill residence, was rented for its quarters. This was occupied until 1924. At that time the club purchased a larger property, for $60,000, raising the funds to pay for the same by two bond issues secured by two mortgages. The first mortgage bonds appear to have been sold to investors and the second mortgage bonds were taken to a great extent by members of the club.

The property purchased in 1924 was known as the Sanders place. There was a commodious building on the same and the grounds were somewhat extensive. Tennis courts were laid out on the grounds and arrangements made for other athletics. There was also a swimming pool. This Sanders property is the only property here involved. Prior to its purchase, the club owned no real estate, and the taxing officers apparently did not regard its personalty of a value exceeding its exemption.

The Sanders house was destroyed by fire in 1934 and arrangements made with the bondholders to use the insurance for putting up another building which the club now occupies. When first organized in 1924, and particularly while occupying the Hill residence, the club at intervals procured lecturers of note to make addresses at the clubhouse. These were largely luncheon talks and the lecturers procured for such talks were men brought to Memphis by the Goodwyn Institute.

After the removal of the club to the Sanders place, the proof does not indicate that the lectures were so frequent. Indeed, such lectures appear to have been delivered at rare intervals until 1935, when these suits began to be pressed to a hearing.

During its existence, the club has offered the use of its quarters free of charge for the meetings of various charitable, literary, and social organizations in Memphis. Some of these groups procured food at the club and thereby increased its revenue from the operation of its restaurant. Other such groups, however, spent no money at the club.

Included in the club's equipment was a small library, consisting of about two hundred volumes, and the club also subscribed to magazines and newspapers, and procured and displayed printed matter from various colleges and universities over the country. One purpose of the club, as testified by some of the witnesses, was to found scholarships for needy boys in the different universities. So far no funds have been available for such purposes.

The defendant club introduced a number of witnesses familiar with its endeavors from the beginning. While

these gentlemen in their testimony stressed the literary and educational objectives of the club, it is nevertheless apparent from their evidence that the activities, resources, and facilities of the club were devoted very largely to social features and to athletics.

On cross-examination of defendant's witnesses the attendance of members at the infrequent lectures in the Sanders place was compared with the attendance of members generally and the attendance of members for athletic purposes. The lectures have not drawn so well.

The club has devoted much of its energy to tennis. Tennis tournaments are held there, drawing celebrated players. A tennis instructor has been employed. And one prominent member testified that he joined the club on account of its facilities for playing the game of tennis.

The proof shows that many parties and dances are held at the clubhouse and there are many social gatherings of alumni clubs of various universities. One of the officers of the club in his testimony in effect admitted that considerable gambling and drinking transpired at the club; just as it does in other clubs.

A financial statement of the club, as of April 1, 1936, was filed and shows that for the previous year there was expended for library, literature, and education $557.75; for athletic building and swimming pool $3334.46; for tennis courts and committee $1463.24; for dances and other entertainments $922.26.

From the foregoing it appears that, while something over $500 was spent by the club for literature and education, something over $5,000 was spent by it for athletic facilities and entertainment.

Upon the whole record we see little, if any, difference in the use to which the property of defendant club is put and the use to which the property of other clubs are put. The social and athletic activities of defendant club seem so greatly to exceed its educational and literary activities we can but conclude that the latter must be regarded as incidental. In *Memphis Chamber of Commerce* v. *City of Memphis*, 144 Tenn., 291, 232 S. W., 73, 74, the court denied of exemption from taxation to the Chamber of Commerce, saying, "the mere fact that it administers to charity, or may give instructions of an educational nature along certain lines, does not render it an educational or charitable institution in the sense of our Constitution and statute exempting the property of such institutions from taxation."

In *City of Knoxville* v. *Fort Sanders Hospital*, 148 Tenn., 699, 257 S. W., 408, 409, the court denied exemption to the defendant hospital, although it gave instruction to student nurses and admitted some charity patients, saying, "the great bulk of its business is the operation of a hospital where patients pay for the services rendered them. That portion of the property devoted to charitable, scientific, and educational purposes is not separable from the remainder."

In *Cook* v. *State*, 90 Tenn., 407, 16 S. W., 471, 472, 13 L. R. A., 183, although in another connection, CHIEF JUSTICE TURNEY observed:

" 'Education' is a broad term, and includes all knowledge, if we take it in its full, and not in its legal or popular sense. Whatever we learn by observation, by conversation, or by other means, away from what has been implanted by nature, is education. In fact, every-

thing not known intuitively and instinctively is education, but not in the sense we must understand the objection to this act.''

While defendant club may be said to be an educational institution in a broad sense, we think it cannot be regarded as an educational institution in the sense of section 28 of article 2 of the Constitution. So far the exemption authorized by that section of the Constitution to educational institutions has not been extended to any institutions save schools or institutions where actual instruction was given as from teacher to pupil. *State* v. *Fisk University*, 87 Tenn., 233, 242, 10 S. W., 284; *University of the South* v. *Skidmore*, 87 Tenn., 155, 156, 9 S. W., 892; *Vanderbilt University* v. *Cheney*, 116 Tenn., 259, 94 S. W., 90; *Ward Seminary* v. *City of Nashville*, 129 Tenn., 412, 167 S. W., 113; *Nashville Labor Temple Co.* v. *Nashville*, 146 Tenn., 429, 243 S. W., 78, 23 A. L. R., 807; *State ex rel.* v. *Waggoner*, 162 Tenn., 172, 35 S. W. (2d), 389. The exemption accorded to the Lodge in *Cumberland Lodge* v. *Nashville*, 127 Tenn., 248, 154 S. W., 1141, rested very largely on the idea that the Masons were a charitable organization.

We do not think that *Gibson* v. *Frye Institute*, 137 Tenn., 452, 193 S. W., 1059, L. R. A. 1917D, 1062, can be regarded as authority in the cases before us. That case involved the validity of a charitable devise, not a question of exemption from taxation. Moreover, there was no showing in that case, as there is here, that ten times as much of the income provided for the institution was to be devoted to athletics and entertainment as was to be devoted to the charitable and educational features.

We do not feel justified in view of the construction that has been given to section 28 of article 2 of the Constitution in holding that an institution devoted chiefly to physical education is such an institution as may be exempted from taxation, though it might be the beneficiary of a charitable trust.

Under its second assignment of error the defendant club insists that the complainants were guilty of such laches in the prosecution of these tax suits as to require that they be repelled in a court of equity. It seems that the first of these suits was brought in 1927 and suits thereafter brought each year, but no effort was made to bring them to a hearing for about seven years after the first suit was filed.

This contention, in our opinion, is answered by the case of *State* v. *McPhail*, 156 Tenn., 459, 2 S. W. (2d), 413. The court therein pointed out that a defendant in a tax suit could at any time, upon motion, have an order entered requiring complainant to speed the cause, citing sections 6199 and 6200, Shannon's Code, and Gibson's Suits in Chancery, subsection 5 of section 750. The proof shows in this case that the defendant club was aware of the pendency of these suits and that the matter was discussed by the officers and directors of the club and, indeed, that an interview was had with the taxing officials. Defendant club, however, was advised by lawyers that it was not liable for the tax and did nothing to have the controversy settled.

We cannot see that the delay in bringing the tax suits to a hearing has worked any such prejudice to defendant club as would constitute a bar to such actions. True, it is claimed that certain witnesses who might have testified for the club have died and certain of the records of

the club have been destroyed by fire, but we think that the defendant club was able to make full proof as to its organization and the conduct of its affairs by surviving witnesses and available records. The missing proof would merely have been cumulative.

The third assignment of error makes the point that complainants are estopped to assert their alleged lien for taxes against the property of defendant club as against the bondholders, said to have purchased the club's bonds on a representation made to them that the property of the club was exempt from taxation. That said intervening bondholders "purchased the said bonds several years after said suits had been filed, but without any knowledge thereof."

By section 31 of chapter 602 of the Acts of 1907, the taxes for which these suits were brought constituted a lien upon the property securing the bonds. The lien attached to any and all interests in the property "whether in reversion of remainder or of lienors, or of any nature whatever." Taxes for these several years appear to have been regularly assessed by the State, county, and city taxing authorities, and that those purchasing the bonds were charged with notice of the tax liens as they would have been of any other liens upon the property.

The testimony of the intervening petitioners shows that they bought their bonds, none of them later than 1928 or 1929, and at that time there had been no such delay in the prosecution of these suits as to justify these parties in supposing the suits were abandoned.

The fourth and sixth assignments of error urge that these suits should have been dismissed because there

is no proof to sustain the affirmative allegations of the bill that the county trustee and the treasurer of Memphis had caused to be published in newspapers the warnings or monitions to delinquent taxpayers required by section 2 of chapter 77 of the Public Acts of 1923 and otherwise. In *State ex rel.* v. *Collier*, 160 Tenn., 403, 432, 23 S. W. (2d), 897, 906, we adopted from 37 Cyc., 1069, as follows:

"In support of an assessment of taxes, it will be presumed that it is valid, regular and correct and that various officers charged with the making of the assessment all performed their duties in good faith and at the proper time and in conformity with the statutes and that other various Acts were legal and proper; and this presumption will stand until overcome by satisfactory evidence to the contrary."

In support of the presumption that every sworn officer has done his duty, see *Lummus Cotton Gin Co.* v. *Arnold*, 151 Tenn., 540, 269 S. W., 706, and *Siler* v. *Siler*, 152 Tenn., 379, 277 S. W. 886.

The seventh assignment of error complains that the court below erred in overruling exceptions filed by defendant to certain affidavits of ordained taxing officials to prove the validity of tax assessments sued for and the amount thereof together with interest, penalties, costs, etc.

These affidavits are nothing more than certificates of the taxing officials, the custodians of the tax records, with an oath added. In *Lake County* v. *Morris*, 160 Tenn., 619, 28 S. W. (2d), 351, 353, we held "that a duly certified copy of delinquent assessments, taken from the roll on file in the office of the trustee of Lake county, and

authenticated by that official, was sufficient evidence to justify the decrees of the chancellor in the absence of any other proof."

To the same effect see *State* v. *Collier*, 165 Tenn., 28, 52 S. W. (2d), 361.

We do not think there was any error in the consolidation by the chancellor of these various suits, although some were separate suits by the City of Memphis. All the suits sought to reach a common property and all of them involved the same questions. Gibson's Suits in Chancery, section 774.

State revenue being involved, the State revenue being the principal thing involved in the consolidated cases, we think appellate jurisdiction of all the cases is with this court under chapter 100 of the Public Acts of 1925.

Some question is made about the authority of the City of Memphis to bring the separate suits. The statutes referred to by the city, however, seem to clothe it with such authority.

While there has been no such laches in the prosecution of these suits as to defeat them, it is undoubtedly true that those charged with the conduct of the suits have delayed in bringing them to trial. Acting under advice which it deemed good, the defendant club was denying liability for the taxes and undoubtedly has been put to disadvantage and will be subjected to much embarrassment, if not closed up, should the entire sum now due by way of taxes, interest, penalties, costs, etc., be exacted of it. We think this is a proper case, under authority of *East Tennessee Brewing Co.* v. *Currier*, 126 Tenn., 535, 150 S. W., 541, and *Shipp* v. *Cummings*, 158

Tenn., 526, 14 S. W. (2d), 747, to remit penalties and interest. As we understood counsel for complainants, they expressed at the bar of this court willingness to such a course. Therefore, remitting interest and penalties, the decrees of the chancellor will be affirmed.