CITY OF MEMPHIS *v.* ALPHA BETA WELFARE ASS'N.

(*Nashville,* December Term, 1938.)

Opinion filed April 1, 1939.

K. C. LARKEY and WILLIAM GERBER, both of Memphis, for plaintiff.

FRANK M. GILLILAND and JOHN R. GILLILAND, both of Memphis, for defendant.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

The Alpha Beta Welfare Association is a nonprofit corporation organized under the laws of the State of Tennessee. The Association, in the year 1930, purchased a house and lot in the City of Memphis for the use of the local chapter of the Phi Chi Medical Fraternity of Memphis. The property was assessed for taxation for the year 1936 by the City of Memphis, and the taxes remaining unpaid a distress warrant was issued to enforce collection of the taxes and funds of the Association sufficient to pay the taxes were impounded. The trial judge dismissed the garnishment proceeding upon the ground that the Association is a general welfare corporation and that the real estate owned by it, and involved in the case, is used by it exclusively for educational purposes and is, therefore, exempt from taxation.

On the city's appeal, the Court of Appeals affirmed the judgment of the trial court. Thereupon the city filed its petition for *certiorari* to this court, which was granted and argument has been heard.

The one question presented for determination is whether or not the property in question is used exclusively for educational purposes, within the meaning of the Constitution and statutes of the State of Tennessee.

Section 28, Article 2, of the Constitution of this State provides, in part, as follows:

"All property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational. . . ."

Chapter 602, Acts 1907, section 2, subsec. 2 (Code, section 1085, subd. 2), provides tax exemption for:

"All property belonging to any religious, charitable, scientific, or educational institutions, when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income."

The specific purpose for which the Alpha Beta Welfare Association was created, as stated in its charter, is the "promoting and providing for medical and scientific education of young men, and for the purpose of owning property, both real and personal, to be used exclusively in furthering the aforesaid purposes; . . ."

The only witnesses who testified on the trial of the case were three physicians introduced by the Association. Thus the facts of the case are not in controversy.

The Alpha Beta Chapter of the Phi Chi Medical Fraternity in the Medical School of the University of Tennessee, at Memphis, is unincorporated. Its membership is made up of the alumni of the Phi Chi Fraternity residing in the City of Memphis, who are in good stand-

ing, and the active members of the chapter are the undergraduates of the Medical School.

The specific purpose of the Phi Chi Medical Fraternity is to promote the welfare of medical students morally and scientifically. For admission to the active chapter, a student must be desirable from a scholastic and moral standpoint. No one is eligible for membership in the active chapter except matriculants in the University of Tennessee Medical Department.

Prior to the organization of the Association, in 1930, the student members of the Alpha Beta Chapter of the Phi Chi Fraternity were living in boarding houses, scattered around over the city, the University being without dormitories. As the result of the appeal of the then undergraduate members of the Fraternity, a number of the leading doctors of Memphis interested themselves in organizing the Welfare Association in order that suitable property might be acquired and the student members of the Fraternity housed under one roof. This was considered very essential to the welfare of these members and to the successful carrying out of the purposes of the Fraternity.

It appears that about fifty students live in the house in question and each one pays $37.50 per month, which covers board, lodging, and Fraternity dues. They maintain a mess, with which the Association has nothing to do. Supervision is exercised by the Association over the physical condition of the premises and over the conduct of the student residents. A high standard of moral and ethical conduct is demanded.

It is shown that the alumni of the Phi Chi Chapter have furnished the students with a considerable number of books, the majority of which are medical in their

scope; but others are upon subjects of general information and interest. Additional books are being added to this library from time to time.

No teaching staff is maintained by the Association or by the Fraternity. No classes of any kind are conducted on the premises. However, other things of a cultural and educational nature are relied on as entitling the Association to tax exemption. One of the witnesses was asked:

"Q. State what supervision, if any, is exercised by the older members of the active chapter over the younger members, both as to morals and scholastic work?

"A. Well, you might say that the older men, in a measure, act as tutors to the young man. It must be borne in mind that the study of medicine is a pretty hard subject to embrace, and that it takes a man about two years, even though he be a college graduate, to learn to study medicine. Now, that is an accepted fact, and the advantages that the younger men receive through contact and the so-called tutoring from the older men is, without question, very beneficial."

Asked for what purpose the property in question is used, the witness replied that it was used to house the active members of the fraternity and elaborated by stating:

"Its purpose is to provide better housing conditions, to bring the members into a group where each and all of them may benefit from the contact with one another, the purpose of this being to turn out a more finished product of a doctor. Now, to be more specific, these men are grouped according to classes. In other words, the first quarter men are grouped together where they will have the benefit of exchange of thought and ideas relative to

the subject-matter of their studies. This applies to the four different groups that occupy the house. The younger men also enjoy the benefit of counsel and advice on the part of the older men.''

Another witness states:

''The real purpose of the association is to make it possible for medical students in whom we could take a personal interest because of their contacts in the house with the alumni, to become better doctors.

''Q. In other words, to learn more of medicine and science pertaining to medicine?

''A. Well, I think that in this connection these boys learn something that they can't get in their ordinary work in the college. There they are taught the science of medicine. All of their work is science. By their associations here, and by their associations with us, and of other men, of national and international repute in our particular profession, they are enabled to acquire the art of medicine, and that is many times more essential in the practice of the profession than science.''

Again:

''I would say in addition to the primary purpose of having a decent place in which to live, we have a place in which it is possible for these boys to make contacts with local men, practicing physicians and faculty men, that they could not make at a boarding house, because they have facilities there for having these men at the time that is convenient for the men. Sometimes it is just a dinner; or just a social visit, and many times they are combined with that and a rather formal talk or lecture afterwards. And many times they have a rather informal talk in the evening, without any dinner. That has been done many times, without any dinner, or anything. They have a

room there, a ballroom, which makes a very nice room, gathering room, or chapter room, any way you want to look at it, and these men can address the boys there very formally, or informally, with or without lantern slides, with or without motion. And, in addition, to my mind, one of the main reasons is that by having a place large enough to house a good number of boys, they are able to take advantage of the stand out students in their groups, and obtain from them knowledge of their course in reviews and check ups, that enable them to make better marks themselves. And as I understand the idea, scholarship is one of the paramount things for which the thing was started, and the paramount reason for the University being here.''

It is shown in proof that some twenty-five or thirty men have delivered lectures to the students since the property was acquired; that men who are outstanding in their specialties go there and give discourses on their particular branch of the profession, sometimes with motion pictures and sometimes with lantern slide projections and thus enable the students to form an idea of whether or not they would be interested in some particular branch of medicine rather than in general practice itself. That the Association encourages the presence at the fraternity house of any outstanding medical men who may happen to visit Memphis, or who may be returning to renew their collegiate associations and these, it is said, contribute something to the cultural and intellectual welfare of the student members of the Fraternity.

It is further shown that a code of high morality, or culture and general refinement, and a knowledge of the amenities of polite society, are prime requisites in the success of a doctor; that the alumni associates seek to

inculcate these things in the minds of the students by active supervision over the men in the chapter and all of its functions.

The Association is operated in accordance with the purposes set forth in its charter, not for profit, but for the better education of the student members of the Fraternity, and its real property, sought to be taxed, is devoted solely and exclusively to such purposes.

The reason given in the proof for the organization of the Association was to acquire the property in question for the purpose of providing living quarters for the active members of the Fraternity. The local chapter of the Fraternity was unincorporated and not such an en tity as the owner of the property was willing to deal with. Hence, the incorporation of the Association to take title to the property. The purpose, however, behind the purchase of the property was to get the actual members of the Association under one roof in order by precept and instruction they might be made better doctors. It is shown in proof that the student members of the Fraternity by reason of being housed together receive medical, ethical, and cultural instruction that they otherwise would not get. The acquisition of the property in order that the students might be housed together was but the means to the end that the purpose of the Phi Chi Medical Fraternity to promote the welfare of medical students morally and scientifically might be more effectively carried out.

The fact that a corporation is organized under a general welfare charter which authorizes educational activities does not of itself exempt the property of the corporation from taxation; the use it makes of the property is the test for determining whether or not its prop-

erty is taxable. *State ex rel.* v. *Waggoner*, 162 Tenn., 172, 35 S. W. (2d), 389; *Ward Seminary* v. *City Council*, 129 Tenn., 412, 167 S. W., 113; *M. E. Church, South,* v. *Hinton*, 92 Tenn., 188, 21 S. W., 321, 19 L. R. A., 289.

In *State et al.* v. *Rowan et al.*, 171 Tenn., 612, 106 S. W. (2d), 861, 864, it was held that a club for university men was not an educational institution whose property was exempt from taxation under Constitution and statute, where social and athletic activities of the club so greatly exceeded educational and literary activities that the latter were merely incidental to the former. The court said in the course of its opinion: "So far the exemption authorized by that section of the Constitution to educational institutions has not been extended to any institutions save schools or institutions where actual instruction was given as from teacher to pupil," citing a number of our cases.

The instant case can be readily distinguished from *State et al.* v. *Rowan et al., supra,* on its facts. In the instant case no physical activities whatever appear to be conducted by the Association, or by the Fraternity, except that some six or eight dances a year are allowed to be given under careful supervision. There is direct instruction given by eminent doctors to the students by means of lectures. Furthermore, it is shown that the lower classmen are tutored by the upper classmen. Thus there exists a system of instruction approximating that of teacher to pupil. In addition to all this, it is shown that a rigid code of ethics is laid down and enforced.

■ ■ It is contended for the city that under the great weight of authority tax exemptions have not been granted to college Greek letter fraternities, except under express statutory authority. This appears to be true.

61 C. J., 495; Annotation, 35 A. L. R., 1041. In our opinion no blanket rule can be laid down and made applicable to all fraternities. Whether or not the property of a fraternity is exempt from taxation is dependent, as in all other cases, on the use made of the property. Each case must be determined on its own facts. In the instant case, both the trial judge and the Court of Appeals have determined that the property in question is used exclusively for educational purposes and with this finding we feel constrained to concur. The result is that the decree of the Court of Appeals is affirmed at the cost of the City of Memphis.