BAPTIST MEMORIAL HOSPITAL *v.* COUILLENS.

(*Nashville,* December Term, 1939.)

Opinion filed June 8, 1940.

JOHN W. McCALL and JULIAN C. WILSON, both of Memphis, for plaintiff in error.

J. GRANVILLE FARRER, of Memphis, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action to recover damages by a pay patient in the Hospital for injurious burns received as the result of alleged neglect of attendants, selected with reasonable care, in applying a hot pad. From a judgment for $1,000 the Hospital appealed. The Court of Appeals affirmed, with the modification, however, that no property held in trust and being used for charitable purposes might be subjected to satisfaction of the judgment, but without determining whether or not the defendant corporation had funds or property free from the immunity declared by its decree. This Court has granted *certiorari* and

heard argument. The question for consideration, as will be seen, comes down to this: In recognition of both legislatively declared and commonly observed changing public policy, may not the doctrine of immunity of charitable trusts from liability to beneficiaries for torts be limited, consistently with the principles heretofore announced by this Court, to exemption from levy of that property of the defendant which is directly and exclusively used in execution of the purposes of the trust? The petition broadly challenges the liability of the defendant, a charitable corporation, for damages resulting from negligence of its servants, selected with due care, in caring for a patient, a beneficiary of the charitable trust.

It is found by the Court of Appeals, and not denied, that the defendant Memorial Hospital, located in Memphis, is a purely charitable institution, operated under a non-profit charter granted by this State. The insistence made for the Hospital is further, as stated in the opinion, "that all of its property and assets, including the hospital building and the buildings operated in connection therewith, and all the equipment and furnishings, consists of trust funds and that it has no assets other than trust funds and property out of which to pay any judgment that might be obtained against it as the result of the negligence of its agents, servants, nurses or employees."

Touching the precise character and source of the property owned and operated by the Hospital, the Court of Appeals makes this finding, supported by the record:

"The hospital building and furnishings and the other property owned by the defendant at the time the suit was brought, and at the hearing of the cause in the court below, was from funds and property donated to the cor-

poration, and the earnings from other business owned either wholly or partly by the corporation. This property consisted of a very extensive hospital plant and building located in the City of Memphis; a large office building where the space was rented in the main to physicians and surgeons in the City of Memphis; a retail drug store, the business of which was not confined solely to furnishing drugs and medical supplies to the hospital or its patients, but retail sales were made to the general public from the drug store as well as to the hospital and its patients. It also owned an interest in a business engaged in selling and dealing in surgical supplies, etc., and also a large farm located in the State of Mississippi.

"It also operates a training school for nurses in buildings on the premises devoted to that purpose, and also affords hotel accommodations, including rooms and meals, for friends and members of families of patients confined and being treated in the hospital. The hospital receives both charity and paying patients for hospitalization, some of the rooms being used for charity patients and many of the rooms are occupied by paying patients."

Further details are thus stated in the opinion:

"The record shows that in addition to its hospital plant and equipment and the nurse's training school, appellant owns and operates the office building, the rent from which is approximately $34,000.00 annually; a barber shop from which it derives an annual revenue of approximately $7,000.00, and the gross business from the drug store, which appears to be operated like any privately owned drug store, and caters to the general public, amounts to a business of about $190,000.00 annually. It owns the controlling interest in a surgical supply house in the City of Memphis; and also owns a large plantation which is carried on its books at a valuation of $200,000.00, and

which it is now selling on long term payments secured by a long term mortgage.''

It is the earnest insistence of petitioner that all of these properties and interests therein and all incomes therefrom are held and devoted to hospital purposes, constitute trust property, held by the defendant in trust for the use and benefit of this charitable institution.

The Court of Appeals reviews at some length the history of the doctrine of exemption of charitable institutions from liability for torts and cites and quotes from the decisions in this and other jurisdictions, including the English case of *Feoffees of Heriot's Hospital* v. *Ross (House of Lords Cases)*, 12 Clark & Finnelly, 507; the leading case in this State of *Abston* v. *Waldon Academy*, 118 Tenn., 24, 102 S. W., 351, 11 L. R. A. (N. S.), 1179; *Gamble* v. *Vanderbilt University*, 138 Tenn., 616, 200 S. W., 510, L. R. A., 1918C, 875; *Love* v. *Nashville A. and N. Institute*, 146 Tenn., 550, 243 S. W., 304, 23 A. L. R., 887; *Wallwork* v. *Nashville*, 147 Tenn., 681, 251 S. W., 775; *Lincoln Memorial University* v. *Sutton*, 163 Tenn., 298, 43 S. W. (2d), 195; *McLeod* v. *St. Thomas Hospital*, 170 Tenn., 423, 95 S. W. (2d), 917, and *Vanderbilt University* v. *Henderson*, 23 Tenn. App., 135, 127 S. W. (2d), 284, decided by the Court of Appeals in July, 1938, and *certiorari* denied by this Court.

The opinion in the last named case, by Judge FELTS of the Middle Division, is an exhaustive and discriminating review of the subject, with particular reference to our Tennessee decisions. The decree affirming a judgment for plaintiff, a pay patient who suffered injuries as the result of negligence of the servants of this charity supported hospital, limited as it was to satisfaction from the proceeds, if available, of insurance carried by the defendant, was consistent with holdings heretofore in this jurisdiction that property placed by benevolent parties

under the control of a corporation for charitable uses may not ordinarily be subjected to the satisfaction of claims arising out of the negligence of the servants of the corporation; but that a judgment may be rendered when it appears that satisfaction therefor may be had without encroaching upon property devoted strictly to the purposes of the trust.

It will be seen that the Court of Appeals apparently conceives that the practice in this State, rather than the principle involved, has been modified by expressions in the recent opinion in *McLeod* v. *St. Thomas Hospital, supra,* so that a judgment may now be recovered in an action for negligence of the servants of a charitable institution, *whether or not* it appears that satisfaction may be had of such judgment without encroachment upon, or impairment of, the trust used property. So conceiving, while expressly reserving the question presented on this record whether all of the assets of this defendant are entitled to immunity, the Court enters its decree, with the proviso "that plaintiff may not look to any property owned or held in trust by the defendant for charitable purposes for the satisfaction of the judgment."

The most recent decision by this Court is the McLeod case, which the Court of Appeals treats as controlling its holding, in which the judgment of the trial Court sustaining a demurrer to a replication to a plea of exemption as a charitable institution was reversed, and the case remanded for trial on the merits. From the pleadings it appears that the case differed from that before us in several particulars noted in the opinion. (1) Plaintiff was a visitor to the Hospital, not a beneficiary of the trust, but a stranger, a distinction treated by some authorities as important; (2) she was alleged to have fallen by reason of a condition of the floor, "the result of the

negligence of the defendant corporation itself," and not the "negligence of any agent or servant of the defendant," again, a distinction sometimes recognized as having a bearing; and (3) the defendant was carrying liability insurance, an ordinary liability policy, such as was "construed in *Gray* v. *Houck*, 167 Tenn., 233, 68 S. W. (2d), 117, and *Associated Ind. Corp.* v. *McAlexander*, 168 Tenn., 424, 79 S. W. (2d), 556, to be an obligation upon the part of the insurer to pay such obligation as the law my impose upon the insured, under the terms of the policy." [170 Tenn., 423, 95 S. W. (2d), 918.] In other words, a judgment against the defendant Hospital in that case could be satisfied otherwise than by subjecting any property donated to, or being used by the Hospital for the purpose of its trust.

The holding in that case, whatever general expressions may be found in the opinion, was, therefore, consistent with the practice and the principle applied in our previous cases in this State, beginning with *Abston* v. *Waldon Academy, supra*, in which the broad rule is laid down that "a tort action cannot be maintained against a charitable institution, where, if so, the trust property must be appropriated to the satisfaction of such liability."

It will have been observed that, in effect, the Court of Appeals, controlled by its construction of the opinion in the *McLeod Case, supra*, holds that a judgment may be rendered against a charitable institution in any case for damages based on negligence of the defendant's servants, whether or not there be any means of satisfaction of the judgment other than by appropriation of property devoted exclusively to the purposes of the charitable trust. This seems to go beyond any previous holding of this Court, when the facts of the cases are considered, and it goes further than appears to us to be called for by the

facts of this case. We do not have such a case before us, and it is, therefore, unnecessary to decide that question. On the contrary, we are of opinion that the facts disclosed by this record show that this defendant has assets out of which the judgment may be satisfied without resort to, or impairment of, those funds which should be treated as within the immunity protection. This, it is true, is a strongly controverted issue, but once which, in recognition of both legislatively declared and commonly observed changing public policy touching charitable corporations of this character, seems to call for an answer in favor of the right of recovery.

We concede the plausibility and weight of the reasoning in opinions of some other Courts, as yet clearly in the minority, denying immunity to charitable trusts against torts of their servants, notably the New York Court of Appeals, *Sheehan* v. *North Country Community Hospital,* 273 N. Y., 163, 7 N. E. (2d), 28, 109 A. L. R., 1197; Id., (1937), 273 N. Y., 580, 7 N. E. (2d), 701; cf. *Schloendorff* v. *Society of New York Hospital* (1914), 211 N. Y., 125, 105 N. E., 92, 52 L. R. A. (N. S.), 505, Ann. Cas., 1915C, 581; the often quoted Minnesota case (*Mulliner* v. *Evangelischer Diakonniessenverein* (1920), 144 Minn., 392, 175 N. W., 699), the Courts of New Hampshire, and Rhode Island, and certain others; also, expressions of some text writers (see Scott on Trusts, Volume III, pp. 2150, 2152, approving the principle that the ''Institution should be just before it is generous'').

However, we are constrained to abide in principle by the rule which this Court has followed since *Abston* v. *Waldon Academy,* 118 Tenn., 24, 102 S. W., 351, 11 L. R. A. (N. S.), 1179, and which is followed by the overwhelming majority of the Courts in other jurisdictions, and adopted in the recent ''Restatement of the Law of

Trusts,''—that a beneficiary of a charitable trust may not subject the trust property to the satisfaction of his claim for tort based on the negligence of its servants. (See exhaustive citation of authorities in 10 Am. Jur., p. 692, holding that ''a person who receives an injury from the negligent acts of the servants of a charitable corporation at a time when he is accepting the benefits of the charity cannot recover for such injury, provided the corporation used due care in selecting its servants.'') But we feel justified by previous holdings in this State (for example, *Gamble* v. *Vanderbilt University, supra,* where an office building was operated for profit) and by modern conditions prompting a changing public policy, in restricting this immunity to such property only as is directly and exclusively used in the operation of the trust, as distinguished from that incidentally held and employed in the effort to earn or provide funds for carrying on the work of the trust.

*Gamble* v. *Vanderbilt University, supra,* and an annotation in 14 A. L. R., 580, 584, are cited in 10 Am. Jur., page 690, for the view that, ''if there are funds which are not part of the trust which may be resorted to in order to satisfy the judgment, there may be a recovery.''

It has been seen that in both of our recent cases in which a judgment was permitted to be entered for a tort (*McLeod* v. *St. Thomas Hospital, supra,* and *Vanderbilt University* v. *Henderson, supra*), this justification for the judgment appeared in the form of insurance. There has, therefore, been no disregard of the rule recognized by Chief Justice Neil in his opinion in the Gamble Case when he said [138 Tenn., 616, 200 S. W., 514, L. R. A. 1918C, 875], ''It should be noted that in this class of cases the court will not permit judgment to be rendered when

it is apparent there is no property out of which it can be collected. *Abston* v. *Waldon Academy, supra.*"

The Court of Appeals has apparently construed one expression particularly in the opinion in the McLeod Case, as repudiating this rule, and as justifying the rendition of a judgment whether or not the defendant has funds not so apart from the trust that the judgment may be satisfied therefrom. It is true that it was observed in the McLeod Case that, "Certainly it is no defense to a tort action, that the defendant has no property subject to execution." In the first place, this was an argumentative statement of a general proposition and as such is unquestionably sound. And, in the second place, it had no direct or controlling application to the facts of the case decided, from which it plainly appeared, as heretofore shown, that the judgment could be satisfied without encroachment upon the property being used in the trust. But however all this may be, since in the case now before us the defendant has property other than that which is exempt under the trust doctrine out of which an execution may be satisfied, the question of whether or not a judgment would be entered under other circumstances is not presented for decision, and is, therefore, reserved.

Various grounds have been given by the Courts for the immunity granted these charitable institutions. Perhaps the dominant and most soundly based of these grounds is thus expressed by GREEN, C. J., in *Lincoln Memorial University* v. *Sutton,* 163 Tenn., 298, 43 S. W. (2d), 195, 196; "The idea is that the tolerance of such liabilities might eventuate in the destruction of the charity and discourage donors, to the detriment of the public welfare." The modern multiplication of these institutions and the vast investments therein, with their accompanying ramifications of operation and spreading of incidental activities,

has apparently reduced this danger, increased their capacity for responding to the calls of those who suffer injuries incidental to their operation, and rendered more equitable the payment of compensation to those so injured. Thus the demands of the public welfare for protection of trust institutions from liabilities for wrongs committed in their conduct have become less imperative, as compared with the needs of the injured individual.

An obvious analogy is to be found, in reason, between the exemptions from taxation granted to these institutions, and their immunity from liabilities for their torts. It is pertinent to observe that the public policy of this State in regard to tax exemption of such institutions has undergone a change, evidenced by Court constructions of our older statutes, and more emphatically, by recent legislative action.

The terms "purely" and "exclusively" found in the constitutional (Art. 2, Sec. 28) and statutory (Chap. 602, Acts 1907) respective exemptions of property used for charitable, etc., purposes, are held by this Court to be synonymous, and to require that the property be used *wholly* for the purposes mentioned in order to come within the exemption. *Memphis Chamber of Commerce* v. *Memphis,* 144 Tenn., 291, 232 S. W., 73; *Nashville Labor Temple* v. *Nashville,* 146 Tenn., 429, 243 S. W., 78, 23 A. L. R. 807. In the later case of *State ex rel.* v. *Waggoner,* 162 Tenn., 172, 35 S. W. (2d), 389, this Court excluded from exemption a residence owned by an educational institution and occupied by an official because it was being used only incidentally rather than primarily for educational purposes. And see the more recent case of *State et al.* v. *Rowan et al.,* 171 Tenn., 612, 106 S. W. (2d), 861, in which further emphasis is put on the limitations upon exemptions under our laws. A tendency

has been shown to tighten, rather than expand, the scope of our tax exemptions.

But in 1935, obviously in response to a growing public sentiment against abuse of our exemptions of educational and charitable institutions, the Legislature enacted Chapter 47, Pub. Acts of 1935, re-defining, limiting and restricting the exemption of ''any real estate owned by any religious, charitable, scientific or educational institution'' to that ''occupied by such institution or its officers exclusively for carrying out thereupon one or more of the purposes for which said institution was created or exists;'' and further expressly provided that, ''The real property of such institution not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes, *whether the income received therefrom be used for one or more of such purposes or not, shall not be exempt.*'' (Italics ours.) Emphasis is given to this limitation of exemption by a succeeding provision dealing with partial use reading, ''but if a portion only of any lot or building of any such institution is used exclusively for carrying out thereupon one or more of such purpose of such institution, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion . . . shall be subject to taxation.''

In recognition of the analogy before suggested between exemption from liability for taxation and exemption from liability for tort, it would seem proper to adopt the same property line, so that such property of charitable institutions as is exempt from liability for taxes shall likewise be exempt from liability for torts, and none other. After all, the public welfare is the dominant consideration in both classes of cases; and it is the preroga-

tive of the General Assembly to declare the policy of the State touching the general welfare. The adoption of this rule will save confusion and relieve from uncertainty these helpful humanitarian institutions as to the character and extent of the obligations which they incur in their operation to the public and to individuals.

■ With application to the instant case, referring to findings of fact hereinbefore quoted from the opinion of the Court of Appeals, it is apparent that this great and worthy institution owns property of large value subject to taxation, under the Act of 1935, not being used ''exclusively for carrying out *thereupon* one or more of such purpose,'' that is, for hospitalization, although the income received therefrom is used for ''such purposes,'' and, therefore, is not immune from execution under a judgment for tort. We deem it unnecessary to specify further.

This holding preserves unimpaired, in principle, the rule that a beneficiary of a charitable trust cannot subject property directly devoted to the carrying out of the trust, to the payment of damages resulting from negligence.