VANDERBILT UNIVERSITY v. HENDERSON.—127 S. W. (2d) 284.

Middle Section.   July 9, 1938.

Rehearing denied August 27, 1938.

Petition for Certiorari denied by Supreme Court April 1, 1939.

Leftwich & Denny, of Nashville, for plaintiff in error.

Jordan Stokes, Jr., Whitworth Stokes, and Jordan Stokes, III, all of Nashville, for defendant in error.

FELTS, J. This is an action by John E. Henderson against Vanderbilt University and certain individuals to recover for personal injuries suffered by him while a patient in Vanderbilt Hospital. These individuals were trustees and other officers of the university and the surgeon and the physician treating plaintiff. He took a nonsuit as to some of these individuals, a verdict was directed for the rest of them, and there is now no question before us in regard to them. He obtained a verdict and judgment against Vanderbilt University for $2,000, and it has appealed in error and assigned errors.

Vanderbilt University is an eleemosynary, non-profit corporation. Among its other undertakings, it runs a hospital, in which both charity patients and paying patients are treated. The receipts from paying patients are used for operating expenses of the hospital, but are insufficient for this purpose, and the university supplies the balance of such expenses from the income on its endowment.

Plaintiff was taken by his daughter, Mrs. Leftwich, to the hospital on February 17, 1935, and received by the hospital as a paying patient. He was irrational and delirious. The agents and servants of the hospital were aware of his condition. They put him on a bed near a steam radiator, which was unguarded, and to prevent his getting off the bed, they placed sideboards on each side, extending about ten or eleven inches above the mattress. At 8:30 a. m. February 19th, while plaintiff was still irrational and delirious, and after his night nurse had gone off duty, and while no one was in the room with him, he got out of bed and came in contact with the radiator. The head nurse on duty, who was just across the hall, heard a clatter of the boards and a cry of plaintiff, rushed into his room, and found him partly out of bed, with his shoulder lying on the radiator. He received severe burns on his back, shoulder and side, which are the injuries complained of.

One of the defenses was that, on receiving plaintiff as a patient, the hospital had made an arrangement with Mrs. Leftwich for her and other members of the family to watch plaintiff in the daytime and to have a special nurse to watch him at night to protect him in his condition; and that the hospital was not to be responsible for watching or protecting him, but only for furnishing proper nursing care and other services. Mrs. Leftwich denied that there had been such an arrangement, and testified that the hospital's employees had agreed to take care of him in the daytime and a special nurse had been employed to take care of him at night. As to this defense, counsel, with commendable frankness, concede that "there was such a conflict in the proof as to constitute an issue for the jury."

Another defense is that plaintiff cannot maintain this action against

Vanderbilt University because it is a charitable institution and he is a recipient or beneficiary of the charity.

This defense was presented by a special plea by defendant to plaintiff's declaration and amended declaration. To this plea plaintiff filed a replication and an amended replication that defendant had a liability, as distinguished from an indemnity, insurance policy issued by the Aetna Casualty Company, by which that company had agreed to pay any judgment rendered against defendant by reason of its negligence and that any judgment recovered herein would be paid out of this insurance and not out of defendant's trust property. To this replication defendant filed a rejoinder that its non-liability was not changed by reason of the fact that it had such insurance; that the policy was not a liability, but an indemnity, policy; that plaintiff had no interest therein; that the income from paying patients was insufficient to pay the expenses of the institution and such expenses were paid by the trust property or the income therefrom; and that plaintiff, though a paying patient, was none the less a recipient of the charity and could not maintain this action. Plaintiff demurred to this rejoinder upon the grounds that the matters alleged in the rejoinder were immaterial; that it was not shown that the income received from paying patients was insufficient to pay the expenses of the services rendered such patients; that it was not shown that plaintiff was a beneficiary of the charity; and that the rejoinder was insufficient in law.

The trial court sustained plaintiff's demurrer to defendant's rejoinder, adjudged the rejoinder insufficient, overruled defendant's motion to strike plaintiff's replication for insufficiency, overruled and disallowed defendant's special plea of eleemosynary institution, ordered defendant to go to trial upon its plea of not guilty, and also sustained defendant's motion to strike "all that part of plaintiff's replication and the amendment thereto which refers to insurance carried by defendants."

The action of the court in striking the replication did not take this pleading out of the record. Code, section 8727; Tennessee Hoop Co. v. Templeton, 151 Tenn., 375, 270 S. W., 73; Transport Corp. v. Caldwell, 19 Tenn. App., 44, 82 S. W. (2d) 571. The only point made upon this action is that the court should have sustained defendant's defense that it was a charitable institution and plaintiff was a beneficiary of the charity and could not maintain this suit. The same defense was again presented by motion for a directed verdict, which was overruled; and this is now relied upon as the principal ground for reversal.

It is generally held that a charitable institution is not liable for the negligence of its agents and servants. Abston v. Waldon Academy, 118 Tenn., 24, 102 S. W., 351, 11 L. R. A. (N. S.), 1179; Scott v. Burton, 173 Tenn., 147, 114 S. W. (2d) 956; Notes; 14 A.

L. R., 572; 86 A. L. R., 491; 109 A. L. R., 1199. It is likewise held that the rule of non-liability of a charitable institution is not changed by reason of the fact that it carries liability insurance to protect it against liability which the law imposes upon it. McLeod v. St. Thomas Hospital, 170 Tenn., 423, 427, 95 S. W. (2d) 917, 918, and cases there cited; Greatrex v. Evangelical Deaconess Hospital, 261 Mich., 327, 246 N. W., 137, 86 A. L. R., 487; McKay v. Morgan Memorial Co-op. Industries & Stores, 272 Mass., 121, 172 N. E., 68.

But we think that in this State this rule of non-liability extends no further than the protection of the trust property of the charitable institution from being diverted from the purposes of the charity to the satisfaction of a tort liability.

This, we think, was the extent of the rule applied in Abston v. Waldon Academy, supra. There a pupil of the institution, who had been injured by leaping from a third floor window to escape fire, sought to recover damages for her injuries. The court said [118 Tenn., 24, 102 S. W., 352]: "Can such an action be maintained where, if so, the property placed by benevolent parties under the control of this corporation for what is well settled in this state to be a charitable use (Franklin v. Armfield, 2 Sneed, 305) must be appropriated to its satisfaction?" And the court held that such action could not be maintained because it would result in taking property devoted to a charitable use for the satisfaction of the judgment.

But where the institution has other property than that devoted directly to the charitable use, it may be held liable for the negligence of its agents and servants and such other property taken to satisfy such liability. Gamble v. Vanderbilt University, 138 Tenn., 616, 200 S. W., 510, L. R. A. 1918C, 875; Lincoln Memorial University v. Sutton, 163 Tenn., 298, 43 S. W. (2d) 195. Where a charitable institution has committed a nuisance it is liable therefor, and its trust property may be taken to satisfy such liability. Love v. Nashville Agr. & Normal Institute, 146 Tenn., 550, 243 S. W., 304, 23 A. L. R., 887.

That the exemption or immunity afforded a charitable institution in this State goes no further than the protection of its trust funds from being taken to satisfy its liability for a tort of its agents or servants, we think, is established by the recent case of McLeod v. St. Thomas Hospital, 170 Tenn., 423, 95 S. W. (2d), 917, 919. In that case Mrs. McLeod visited her husband who was a patient in the hospital. In leaving the building she fell and injured herself by reason of the negligent condition of a tile floor. She sued to recover for her injury. It was developed in the pleadings that the hospital carried liability insurance. The trial judge, however, taking the view that the fact of such insurance did not enlarge the institution's liability or render it liable where it could not otherwise be held, dismissed the suit upon a consideration of the pleadings. The Su-

preme Court reversed this action of the lower court, remanded the case for a trial on the merits, holding that the defendant's plea of exemption because it was a charitable institution was not a sufficient defense. In this case the court said: "Upon consideration of the cases dealing with the question, and reflecting upon the true principle involved, we think it fairly may be said that the exemption and protection afforded to a charitable institution is not immunity from suit, not nonliability for a tort, but that the protection actually given is to the trust funds themselves. It is a recognition that such funds cannot be seized upon by execution, nor appropriated to the satisfaction of a tort liability. And certainly it is no defense to a tort action, that the defendant has no property subject to execution."

This, we think, is a recognition that a charitable institution is liable for a tort of its agent and may be pursued to judgment; but that the institution's trust property cannot be taken to satisfy such judgment; and that where such institution has liability insurance, such insurance is not trust property of the institution and may be appropriated to the satisfaction of such judgment.

In this State the principle upon which protection is extended to the trust property of a charitable institution is analogous to that upon which protection is extended to the funds of a county from being applied to satisfy liability for negligence of its officers or agents engaged in performance of a governmental function. Gamble v. Vanderbilt University, 138 Tenn., 616, 628, 629, 200 S. W., 510, L. R. A. 1918C, 875; Love v. Nashville Agr. & Normal Institute, 146 Tenn., 550, 569, 570, 243 S. W., 304, 23 A. L. R., 887. However, it has been recently held by our Supreme Court that where a county's agent or servant has been guilty of negligence in the performance of a governmental function, the county is liable therefor, and where it has liability insurance, a judgment may be taken against it if such judgment be so limited that it can be satisfied only out of such insurance. Rogers v. Butler, 170 Tenn., 125, 92 S. W. (2d), 414, 415. In the Rogers case the court said:

"One reason supporting the general rule that a county cannot be held liable for the negligence of its agents and employees is that the county has no fund out of which satisfaction for damage thus inflicted can be had. McAndrews v. Hamilton County, 105 Tenn., 399, 58 S. W., 483. Under authority of the statutes quoted, the county has supplied a fund or insurance policy to compensate school children riding on its busses for injuries inflicted by the negligence of those operating such busses. There is, however, no other county fund, and no other authority to provide a fund, to take care of claims of this sort.

"It follows that the judgments rendered against the county must be satisfied out of such recovery as the county may obtain on its lia-

bility policy aforesaid. In other words, the judgments must be limited in their scope something after the manner in which judgments in tort against charitable institutions are restricted. See Gamble v. Vanderbilt University, 138 Tenn., 616, 200 S. W., 510, L. R. A. 1918C, 875.''

As we understand, defendant in the present case concedes that the McLeod case would be authority for holding defendant liable, with the provision that such liability be satisfied only out of its liability insurance, if plaintiff were a stranger and not a patient. Defendant's insistence is that the holding in the McLeod case should not be extended to cover a case like the present one, where the plaintiff is a patient. Some of the cases seem to recognize the distinction insisted upon by the defendant. They hold that a charitable institution is not liable to one who avails himself of its benefits for an injury sustained by him through the negligence of its agents. Such cases put this holding upon the ground that by accepting the benefits, he waives the right to sue for such injuries. Note; 14 A. L. R. 572, 585-604.

We do not believe the waiver theory has met with approval in this State. In the Gamble case the court said [138 Tenn., 616, 200 S. W., 512]: ''We can only add that, with profound respect for the learned courts that have advanced the theory of implied agreement or waiver as the true ground of exemption, we are unable to regard that theory as furnishing a satisfactory basis. There are cases from time to time occurring, and not altogether infrequent, to which it is, as it seems to us, impossible to apply it—patients conveyed to hospitals in a demented condition, persons temporarily unconscious from injuries and who require immediate surgical and other attention, those who are so debilitated by disease as to have no power of understanding the terms of a contract, children too young to understand the meaning of a contract, or to make or be bound by one in any form, or even to understand the nature of the work to be done for them. How can such persons be held to waive a right of action which the law gives them? How can they be held to have agreed to an exemption? Manifestly the only sound theory is that of an exemption based on public policy.''

In the present case the plaintiff, a paying patient, was delirious and irrational at the time he was taken to the hospital and at the time of receiving his injuries. We do not think that he can justly be held to have agreed to waive a right of action which the law gives him to recover for his injuries. We believe there is as much reason and justice in public policy for compensating a patient for injuries suffered by him through the negligence of the agents of a charitable institution, as there is for compensating a stranger for injuries so inflicted. Such an institution's trust property is protected from being applied to satisfy such liability in either case; but where it has

liability insurance, we believe such insurance should be as available to a patient as to a stranger, where such patient has paid for service rendered him by such institution.

In Rogers v. Butler, supra, the plaintiff was a pupil being transported to school in the county school bus. She, of course, paid nothing either for transportation or for tuition. It seems that she was as much a recipient of the benefits as a patient who pays for the services rendered him at a hospital. If there had been any sound basis for a distinction between the right of a recipient of the benefits and that of a stranger to recover for injuries negligently inflicted, we believe our Supreme Court would have applied such a distinction in the Rogers case.

We find nothing in Wallwork v. City of Nashville, 147 Tenn., 681, 251 S. W., 775, contrary to the views here expressed. The extent of the holding in that case was that a paying patient could not hold a municipal hospital, supported by public taxation, liable for injuries inflicted by the negligence of the hospital's agents and servants, where such liability could only be satisfied out of the hospital's funds.

Defendant relies upon Knox County Tuberculosis Sanitarium, Inc., v. Moss, 5 Tenn. App., 589. In this case a guest riding in a truck of a charitable institution was injured through the negligence of such institution's agent, and he sued the institution to recover for such injuries. The court denied him a recovery upon the ground that the institution was immune from such liability. The court said: "The defendant in error must recognize the rule [of immunity], for he advances as a reason why this judgment should not be reversed, that it appears, somewhere, the officers of the institution had liability insurance, and, therefore, the institution would be out nothing, and the judgment should be sustained. If we should do this, we could not give as a reason that the institution had insurance and the result would be that all charitable institutions would be compelled to carry liability insurance, or otherwise judgments would be rendered against them in automobile cases. We do not think this is a good reason."

It is apparent, we think, that the only point decided in the Moss case was that the charitable institution, not liable in a tort action for negligence of its agent, was not rendered liable by reason of having procured liability insurance. The distinction made in the McLeod case between the protection afforded to the trust funds and the recognized liability of the institution where such liability can be satisfied otherwise than by such funds, was not considered in the Moss case. Nor was the question considered whether a judgment so limited as to protect such funds might not be rendered against the institution, as was done in the Rogers case. A decision is authority only for the point actually adjudged and nothing more. Motley v. Harris, 69 Tenn. (1 Lea), 577, 582; Shanks v. Phillips, 165 Tenn., 401, 55 S. W. (2d) 258; Prudential Insurance Company v. Davis, 18 Tenn. App., 413, 433, 78 S. W. (2d), 358.

■ For these reasons we do not believe that the trial judge should have sustained the defendant's defense that it was immune from liability or suit because it was a charitable institution, or that the trial judge erred in adjudging that its plea presenting this defense was insufficient, or in refusing to direct a verdict for it upon this ground.

■ Defendant insists that the trial court should have granted a mistrial because counsel for plaintiff interrogated the jurors on their voir dire as to whether any of them owned stock in any insurance company. We think there is no merit in this insistence. There is no claim that such questions were not asked in good faith to ascertain the qualifications of the jurors. In such case such questions are proper. Luchessi v. Barnard, 7 Tenn. App., 353; Notes, 56 A. L. R., 1454; 74 A. L. R., 860; 95 A. L. R. 404; 105 A. L. R., 1330.

■ Defendant insists that the trial court erred in refusing to give in charge to the jury defendant's special request No. 2, which was as follows:

"I charge you further, gentlemen of the jury, that if you find that Dr. Cate was employed by the plaintiff or his daughter, Mrs. Leftwich for the plaintiff, and you further find that the hospital authorities and attendants executed with reasonable care, the instructions that Dr. Cate gave them, and that the defendants were guilty of no negligence concerning those things of which they assumed responsibility for, then you will find for the defendant; in other words, gentlemen of the jury, the hospital cannot be held liable for a mistake in judgment made by the doctor, if any such mistake was made."

It is not pointed out how the refusal to charge this request was erroneous. The injury sued for did not occur by reason of any instructions or any mistake by the doctor. This request was in applicable to the facts. The hospital's agent and servants were aware of the plaintiff's condition and aware of all the facts and circumstances from which his injury resulted. When they placed him on a narrow bed near a hot radiator, knowing that he was delirious and irrational, we think that, in the exercise of ordinary care, they should have anticipated that he might get out of bed, come in contact with the radiator and suffer the burns which he did actually suffer. The court's general charge, we think, was full, fair and adequate upon the question of whether under these circumstances, defendant's agents and servants were guilty of negligence.

■ Defendant insists that it was error for the court to refuse to give to the jury its special request No. 3, as follows:

"I charge you further, gentlemen of the jury, that it is not insisted by the defendant, as I understand it, that the hospital entered into a contract with the plaintiff, through his daughter, Mrs. Leftwich, whereby Mrs. Leftwich assumed the responsibility for his care in the hospital, but it is the theory of the defendant that an arrangement

was entered into whereby Mrs. Leftwich assumed the responsibility for her father during certain periods of time that he was in the hospital, and I charge you, gentlemen of the jury, that if you so find that such arrangement was entered into between the hospital and Mrs. Leftwich, then you may consider this and give it such weight as you deem proper as going to the question of whether or not the defendant hospital was negligent under the circumstances.''

The only complaint made in the assignments of error, brief or argument upon the court's refusal to give this request seems to be that the court in its general charge to the jury used the word ''contract'' instead of the word ''arrangement,'' in charging defendant's theory that Mrs. Leftwich had entered into an arrangement by which she and other members of the family would watch the plaintiff in the daytime, and relieve defendant of this responsibility. We think there was nothing in this to mislead the jury, and that no prejudice resulted to plaintiff.

Defendant complains that the trial judge, before passing upon whether he would give defendant's special requests Nos. 2 and 3, to the jury, submitted them to the plaintiff's counsel with a request that counsel examine them and make a notation of ''yes or no'' on them. It is not pointed out in the assignments of error, brief or argument how this prejudiced the rights of the defendant.

It results that we find no reversible error in the action of the court below, and that all of defendant's assignments of error are overruled. However, the judgment, as entered below, was unconditional and would permit the funds and property of defendant to be taken on execution to satisfy such judgment. We think the judgment should be so modified and limited as to provide that it may be satisfied only out of defendant's liability insurance, if this be legally possible. But neither the insurer nor the policy is before us, and nothing said in this opinion is intended in any wise to prejudice any right which the insurer may have under the terms of its policy. As thus modified, the judgment below will be affirmed.

Judgment will be entered in this court in plaintiff's favor against Vanderbilt University for $2,000, with interest from the date of the judgment below, and the costs accrued below, provided such judgment, interest and costs shall be satisfied only out of such liability insurance. The costs of this appeal in error are adjudged one-half against Vanderbilt University and its surety on its appeal bond and the other one-half against plaintiff John E. Henderson and his surety on his prosecution bond. Rogers v. Butler, 170 Tenn., 125, 130, 92 S. W. (2d), 414, 415; Gulf Refining Company v. Frazier, 15 Tenn. App., 662, 704, and cases there cited.

Faw, P. J., and Crownover, J., concur.

On Petition to Rehear.

FELTS, J.  On a former day of the term we affirmed the circuit court's judgment in plaintiff's favor against Vanderbilt University, but with the modification that the judgment was limited for its satisfaction to the liability insurance mentioned in the pleadings.

John E. Henderson has filed a petition for rehearing, in which it is said that the policy is not a liability but an indemnity policy, and we are asked to modify our former ruling and enter a general, unconditional judgment against Vanderbilt University and to tax all the costs against it.

Such a judgment would permit the institution's trust property to be taken for its satisfaction, and it is plain that Abston v. Waldon Academy, 118 Tenn., 24, 102 S. W., 351, 11 L. R. A. (N. S.), 1179; Gamble v. Vanderbilt University, 138 Tenn., 616, 200 S. W., 510, L. R. A., 1918C, 875, and McLeod v. St. Thomas Hospital, 170 Tenn., 423, 95 S. W. (2d), 917, forbid the allowance of such a thing to be done; and that we can enter no judgment except one limited as indicated in our former opinion, as was done in Rogers v. Butler, 170 Tenn., 125, 92 S. W. (2d), 414.

The petition for a rehearing is overruled and petitioner is taxed with the costs incident thereto.

Faw, P. J., and Crownover, J., concur.