**VANDERBILT UNIVERSITY v. HART-FORD ACCIDENT & INDEMNITY CO.**

No. 1159.

United States District Court
M. D. Tennessee, Nashville D.

Oct. 29, 1952.

Bass, Berry & Sims and Trabue & Sturdivant, of Nashville, Tenn., for plaintiff.

George H. Armistead, Jr., Jay G. Stephenson and J. G. Lackey, all of Nashville, Tenn., for defendant.

DAVIES, District Judge.

The defendant in this case issued a policy to plaintiff in the face amount of $50,000 to indemnify plaintiff against negligence or malpractice claims or judgments that might be incurred in the operation of Vanderbilt Hospital.

On the night of August 11, 1948, a Mrs. Birdie Mae Moseley, an obstetrical patient in Vanderbilt University Hospital, was seriously injured in the absence of a nurse by being permitted to fall from her bed while under the influence of Delvinal, a drug administered for the purpose of producing labor, which also has the effect of making a patient very restless, requiring her to remain under constant supervision In due course, she was delivered of child, and afterwards, on account of the injuries received, underwent two major brain operations. As a result of the injuries, she was rendered totally and permanently blind.

The defendant in this case was promptly notified of the accident by representatives of the plaintiff, and Mr. Burton Libbey, attorney and representative of the defendant, made a prompt investigation of the facts incident thereto. In due course, he prepared and forwarded to the defendant company a detailed report in connection with all of the facts and circumstances attending the accident and subsequent developments. This report is dated October 18, 1948, and included therein as a separate paragraph and sentence are the following words:

"This is a case of liability."

Attached to the report were the statements of Dr. Sam Cowan, Jr., the attending physician, and Miss Mary Elizabeth Locke, student nurse, who was supposed to have been watching Mrs. Moseley and another patient; Dr. Cobb Pilcher, who removed the hematoma, or blood clot, from Mrs. Moseley's brain; and the statement of Dr. Robert E. Sullivan.

This appears to have been the extent of the investigation at that time, and the defendant allowed matters to rest, pending developments.

On May 14, 1949, Birdie Mae Moseley filed suit against The Vanderbilt University and Dr. Sam C. Cowan, Jr., through attorneys J. Olin White and Sam Milam, seeking to recover the amount of $125,000 as damages for the injuries which she received, and on the same date, her husband, Louis Moseley, through the same attorneys, filed suit against The Vanderbilt University and Dr. Sam C. Cowan, Jr., seeking to collect damages in the amount of $25,000 for expenses incurred, loss of services, etc., and matters rested thusly until November 9, 1949, at which time Mr. White, attorney for Mr. and Mrs. Moseley, addressed a letter to Roberts & Roberts, attorneys, Nashville, Tennessee, representing the Hartford Accident & Indemnity Company, Burton H. Libbey, Attorney, Harvie Branscomb, Chancellor, Vanderbilt University, and Mr. Albert Stockell, attorney for Dr. Sam C. Cowen, Jr., in which he advised all parties that the cases in question brought by Mr. and Mrs. Moseley could be compromised and settled for the sum of $50,000, provided that such settlement was made within a reasonable time and before it was necessary to go to the trouble and expense of preparing the cases for trial, which was set for December 12, 1949. Mr. White did not receive an answer to his letter from any of the parties addressed. However, the letter received by Chancellor Branscomb was forwarded to Mr. Cecil Sims, attorney for Vanderbilt University, and on November 15, 1949, Mr. Sims wrote a letter to the Hartford Accident & Indemnity Company at its home office which reviewed the status of the cases and the offer of settlement hereinabove mentioned, and stating further that as attorney for Vanderbilt University, he had examined the investigation file of Mr. Burton Libbey and also carefully examined into the facts of the case, as well as the applicable law, and that it appeared to him from the examination of the file and of the independent facts, that this was a case of liability which had been admitted by defendant and that the only question to be determined was the amount of damages which would be awarded to each of the plaintiffs, and stating that, in his opinion, it seemed beyond question that a jury would in all probability render verdicts greatly exceeding the sum of $50,000, and ended by making demand upon the defendant to accept the proposed compromise settlement offered by the Moseleys, so as to relieve Vanderbilt University of any possibility of having a judgment rendered against it in excess of the coverage of the policy in question. This letter was also ignored by the defendants.

Previous to the writing of this letter, Mr. Sims had been notified by University authorities of the filing of the Moseley suits, and by reason of the fact that the amounts sued for exceeded policy limits, he was particularly concerned about the situation, and shortly afterwards, communicated with Mr. B. H. Libbey, attorney for the defendant company, who advised him that it was a very serious case, and Sims asked him to keep him in touch with the case, and offered any assistance necessary. He later met Mr. White on the street and asked him the status of the case and inquired if negotiations for settlement had begun. White acquainted him with the serious injuries suffered by Mrs. Moseley and advised him that he had heard nothing from the Hartford company pertaining to settlement. Subsequently, Sims called Libbey and inquired if any steps had been taken toward settlement of the cases, and Libbey advised him at the time that it was too early to begin settlement negotiations, and stated that it would be better to wait until time neared for the trial of the cases before talking settlement.

After Sims wrote his letter to the defendant dated November 15, 1949, to which he received no reply, he had a further conversation with Mr. Libbey about the cases, who, at that late date, advised him that he did not think it was time to begin settlement negotiations and that he was endeavoring to get a contribution toward settlement from Dr. Cowan's insurance carrier. Sims learned from counsel who represented Dr. Cowan's insurance carrier that they would not contribute anything towards settlement;

of the cases, and so advised Mr. Libbey. He also advised him that in his opinion this was a case of absolute liability, that the file showed that the nurse left Mrs. Moseley unattended for about twenty-five minutes at the time the accident happened, and he demanded that the cases be settled, and later notified attorneys for the defendant that if a judgment was secured by the Moseleys in excess of the policy amount, the defendant would be expected to pay it.

Mr. White, attorney for the Moseleys, not having received an answer to his offer of compromise, proceeded with steps to secure an early trial of the cases. He filed a motion to set the cases for trial at an early date, and when the motion was called on the docket, he learned from the Court that the cases had already been set for trial on December 12, 1949. However, when the motion was called, there was no appearance by counsel representing defendants. Thereupon, on November 18, 1949, White gave notice to the defendants of the taking of the depositions of Dr. Culley Cobb, Dr. R. C. Patterson, Jr., Dr. J. W. Fristo, Dr. Swann Burrus, Jr., Dr. Edward A. Attix, Dr. James T. Brown, and Dr. John W. Williams, on November 22, 1949, at the office of the Clerk of the Circuit Court in the Davidson County Court House. Mr. Burton H. Libbey and Mr. Houston Roberts, attorneys, appeared for Vanderbilt University on the first day of the taking of the depositions, but on the second day, only Libbey appeared. Up to this time, no offer or suggestion of settlement of the cases had been made to attorneys for Mr. and Mrs. Moseley.

On Tuesday morning, December 6, 1949, Mr. Jay G. Stephenson, Attorney, of Nashville, Tennessee, called on Mr. White and stated to him that on account of the illness of Mr. Roberts, he had been employed by the Hartford company to represent the defendant, Vanderbilt University, in the Moseley cases; that he had been unable to talk to Roberts about the cases, and requested Mr. White to agree to a continuance. This he declined to do, and the cases remained set for trial on December 12th, six days away, with no definite offer having been made for the settlement thereof.

It appears that on November 21, 1949, Libbey received authority from the home office of the Hartford company to offer the sum of $25,000 in settlement of the Moseley cases, with instructions to discuss the settlement proposition directly with attorneys representing the Moseleys and a representative of the Indemnity Insurance Company of North America, and explain to them that the Hartford company was willing to pay the sum of $25,000 toward settlement, but that since it apparently was going to take more than that amount to settle, it was going to be up to the carrier for Dr. Cowan, the Indemnity Insurance Company of North America, to put up the additional amount. At this time, Libbey had been definitely and finally advised by counsel representing Dr. Cowan's insurance carrier, the Indemnity Insurance Company of North America, that neither did the facts of the accident nor the averments of the declaration establish a case of liability on the part of Dr. Cowan, and that they would not contribute anything toward a settlement of the cases.

The letter authorizing Libbey to offer the sum $25,000 in settlement of the cases is dated November 21, 1949, and is made an exhibit in this case. It is interesting to note that in the last paragraph thereof, Mr. Cahow, defendant's supervisor of liability claims at its home office, mentioned the registered letter which had been written by Mr. Sims on November 15, 1949, and made this inquiry:

"What is all the concern of the University in connection with the excess possibilities? It is our understanding that your courts have held that liability on charitable organizations exists but only as to 'free' property or insurance available to pay the judgment. In the case of Vanderbilt University v. Henderson [23 Tenn.App. 135], 127 S.W. 2d 284, it was held that the amount of recovery would be limited to the insurance coverage, the other holdings of the corporate body being trust fund property. If this be true, what is the

reason for the concern shown by Mr. Sims and the reason for the University, through Sims, feeling a necessity for putting us on notice as to the settlement of the case?"

On December 6, 1949, Mr. Sam Milam, of Russellville, Kentucky, one of the attorneys representing the Moseley plaintiffs, called his co-counsel, White, and advised him that Libbey had offered the sum of $25,000 in settlement of the cases and he had been advised by Libbey that this was the absolute top offer that could be made and that if they wanted to take it, all right, but that was all that the company was going to pay, and there was no use "jockeying" about the matter. Milam advised Libbey to communicate with White, as he was the only one authorized to discuss settlement. Why Libbey apparently did not want to discuss the case with White does not appear in the record, but on November 14, 1949, Milam had seen Libbey in the Federal Court at Bowling Green, Kentucky, and was advised by Libbey that the Moseleys' settlement offer of $50,000 had been received, and wanted to know if he had any other proposition. Milam advised him at that time that $50,000 was the only settlement proposition that he had to make, and told him to see Mr. Olin White, the Nashville attorney, as settlement would have to be made through him.

After Milam advised White on the afternoon of December 6, 1949, that Libbey had made him a proposition to pay $25,000 in settlement of the cases, White tried to call Libbey on the phone but was unable to reach him. He left his phone number, but his call was not returned. The following day, he again called Libbey's office and was unable to reach him. He then dictated a note to Libbey's stenographer to advise Libbey that he had called, and left a message that he and Milam and their clients, the Moseleys, were not interested in the settlement proposition of $25,000.

On December 8th or 9th, Libbey communicated with White for the first time after the accident in question and after the suits had been filed, and according to White, assumed a very indifferent attitude, stating that all the Hartford company

would authorize was $25,000, but that he would communicate any figure White might care to give him between $25,000 and $50,000 to the company; however, the company would never pay $50,000. White advised him he did not care to make any other offer, and stated he felt Libbey should make an offer in the case, inasmuch as it was not incumbent upon him to do all of the offering. However, Libbey stated in answer, "Very well," he thought they would be ready for trial, and they were bringing witnesses from out of the state. This was on December 8th or 9th, approximately seventeen days after Mr. Libbey had been instructed to attempt to settle the matter for $25,000.

On December 12, 1949, the cases of Mr. and Mrs. Moseley v. Vanderbilt Hospital and Dr. Sam Cowan, Jr., were taken up for trial in the First Circuit Court for Davidson County, Tennessee. Shortly before the cases were called for trial, White approached Sims and told him that if an offer of settlement in the amount of $45,000 was made before beginning the trial, it would be accepted. Before Sims could communicate the offer to Stephenson or Libbey, White returned and withdrew the offer and advised Sims not to communicate the offer to counsel for the defendants. There is some conflict in the testimony as to whether or not Sims ever informed defense counsel of Mr. White's statement, but this is immaterial, as the offer was withdrawn almost immediately, and at that time counsel for defendants did not have authority to pay more than $25,000.

Plaintiffs in the damage suits duly presented their evidence in chief, and rested on Thursday morning, December 15, 1949. At the conclusion of plaintiffs' cases in chief, counsel for the defendant, Dr. Cowan, moved the Court to instruct the jury to return a verdict in favor of said defendant, and the motion was granted. Thereupon, a recess was asked, and Mr. Stephenson approached Mr. White and told him if he would make an offer of settlement at some figure between $25,000 and $50,000 he would talk to Libbey and ask Libbey to talk to the home office and see if settlement could be made. White advised Stephenson that he

would not make any such offer but would stand on his offer of $50,000; whereupon, Stephenson advised him that the company would not pay the sum of $50,000 in settlement of the cases.

During this recess, Libbey called Mr. Cahow, supervisor of claims at the home office of the defendant, and advised him that Dr. Cowan was out of the case on peremptory instructions and that he could not get an offer of settlement from the plaintiffs. Cahow then instructed him to pay the policy limit of $50,000 when the opportunity presented itself. However, the defendants began presentation of their cases after the recess and continued throughout the day without making any additional offer of settlement, though at that time counsel for the defendants were authorized to offer the sum of $50,000 in settlement thereof.

On Friday morning, December 16th, the defendant closed its case and moved the Court to direct the jury to return a verdict in its favor, which motion was denied. The defendant then asked for a recess, and Mr. Libbey asked Mr. White to confer with him in the hallway. Mr. Stephenson was present, and at that time Libbey stated to White that if an offer of any sum between $25,000 and $50,000 was made, that he would call the home office of the company and recommend settlement, even though at that time he had authority to offer the sum of $50,000 in settlement of the cases and even though the defendant, Cowan, had already been given a directed verdict. White replied that Libbey had never made a sincere effort to settle the cases and that all offers of settlement were withdrawn and he was going to the jury. Thereupon, Libbey then offered to pay the sum of $50,000, which offer was refused. Libbey then attempted to prevail upon White to name a figure at which he would be willing to settle, and was told that if an offer of $75,000 was made in the cases, he would·recommend it to his clients. Libbey then left the court room and communicated with Mr. Sims, who was trying another case in another court, and advised Sims of the settlement offer of $75,000, and asked him if Vanderbilt would contribute the sum of $25,000 toward settlement of the cases, and Sims advised him

to the contrary. Libbey then returned to the court room and made the following statement to Mr. White:

"I want you to understand me. I am laying $50,000.00 on the counsel table."

White told him that it was too late and he would not accept it for reasons already stated, and that he was going to the jury.

After argument of counsel and charge of the Court, the cases were given to the jury, and in due time a verdict was returned for the amount of $85,000 in the case of Mrs. Moseley v. Vanderbilt and $15,000 in the case of Mr. Moseley v. Vanderbilt. Later, these amounts were reduced by remittitur suggested by the Court to $65,000 in the case of Mrs. Moseley and $10,000 in the case of Mr. Moseley. Appeals were taken but later dismissed by agreement of the parties that the judgment of the Circuit Court would be treated as having the same force and effect as a ruling of the Tennessee Supreme Court.

■ Counsel for defendant Hartford company advances the proposition that this is not a case of negligence. I agree. It impresses the Court as being a case of indifference; indifference to the interests of the insured; such wanton and intentional disregard and indifference to the interests of the assured as to constitute bad faith. There are none of the elements of negligence present in this case. A complete and thorough investigation was made of the facts of the case immediately after the accident, and a full and detailed report thereof was made promptly to the home office of the company. The representative of the company who made the report had sufficient facts before him to reach the conclusion that it was a case of liability, as did Mr. Cahow, the supervisor of claims at the home office. Notwithstanding this knowledge, and although it was repeatedly called to the attention of the defendant herein that judgment in the Moseley cases would in all probabilities greatly exceed policy limits, the defendant never at any time seriously or conscientiously endeavored to make any settlement of the cases until they were ready to be given to the jury.

There is not now, and never was, any substance to the defendant's theory that the insurance carrier for Dr. Cowan should be required to contribute toward a settlement of the cases. This was a subterfuge on the part of the defendant to prolong negotiations and confuse the issues, in an attempt to settle its liability for an inadequate sum. Dr. Cowan was not even present at the hospital on the night of the accident, and had his instructions been followed, the patient would not have been left alone and the accident would never have happened. The nurse who negligently violated her instructions and left the patient alone was an employee of the hospital, and not of Dr. Cowan. Furthermore, as pointed out by counsel for Dr. Cowan, there were no allegations contained in the declarations upon which a case of negligence against Dr. Cowan could have been predicated. When this cause was heard by the Court, it appeared at first blush that there was no actionable negligence on the part of Dr. Cowan and that the judgment of the Circuit Court in granting peremptory instructions as to that defendant was eminently correct and proper. While it is true that both the hospital and Dr. Cowan were guilty of culpable and inexcusable conduct in not immediately advising the husband of Mrs. Moseley of the true causes of her injuries, and while this may have been said to aggravate the damage and may have been made the basis of a malpractice suit against Dr. Cowan and the hospital, yet, it did not reflect in any way upon the question of liability in the first instance.

It has been intimated that if Mrs. Moseley had been operated on promptly, her vision may have been saved. However, this appears to be a matter of conjecture, as there is nothing in this record upon which the Court could rely to substantiate that fact. Furthermore, it appears to be a matter of medical conjecture and the opinion of certain doctors. Be that as it may, there were no allegations in the declarations filed by the Moseleys of any such negligence on the part of either Dr. Cowan or the hospital, and in the depositions which plaintiffs had taken before the trial, there appears to be no evidence upon which such a theory of liability could have been predicated.

How counsel for the defendant in this case ever hoped to have their theory of liability on the part of Dr. Cowan presented to the jury during the trial of the Moseley cases, is not understandable. Plaintiffs' attorneys were, of course, in charge of developing the theory of liability by presentation of the evidence in chief. Counsel for defendants admitted their theory of liability on the part of Dr. Cowan was never at any time communicated to attorneys for plaintiffs; and furthermore, that in the cross-examination of witnesses presented by plaintiffs, they did not develop this theory of liability on the part of Dr. Cowan. This is further convincing evidence that the action of the defendant in basing its indifference toward the cases upon the theory that the insurance carrier for Dr. Cowan should be required to contribute toward a settlement of the cases, was nothing but a sham and subterfuge.

If the defendant Insurance Company was seriously relying on the proposition of joint liability of Dr. Cowan, why was not an offer for settlement of the cases made immediately after the Circuit Court granted peremptory instructions on behalf of Dr. Cowan and discharged him from the cases? Defendant's attorneys received authority to offer the sum of $50,000 immediately afterwards, and if they had been sincerely of the opinion that there was liability on the part of Dr. Cowan and that his insurance carrier should contribute to a settlement of the cases, it seems logical that after Dr. Cowan had received a directed verdict, they would have made the authorized offer of $50,000 at that time, instead of waiting until the next day after all the evidence was in and the cases ready to go to the jury.

It is rather obvious to the Court that although Mr. Libbey in the very beginning disclaimed the fact that he was going to do any "jockeying" about the case, he was, as a matter of fact, "jockeying" up to the last minute, instead of making a sincere, honest effort to settle the cases.

If the offer of $50,000 had been made at the beginning of the trial or shortly after

the granting of the motion to discharge Dr. Cowan, there appears to be a very definite probability that it would have been accepted.

The most striking and convincing evidence of defendant's attitude toward this case is an excerpt from the letter dated November 21, 1949, which clearly reveals the state of mind of Mr. Cahow when he makes inquiry of Mr. Libbey as to why Vanderbilt University is so concerned with the excess liability possibilities. It is apparent from reading this letter that Mr. Cahow felt there was no possibility of any liability on the part of the University over and above the face amount of the policy, by reason of the decision of the Tennessee Court of Appeals in the case of Vanderbilt University v. Henderson. It clearly appears that Mr. Cahow was convinced that there would be no excess liability on the part of the University, and, for that, reason, the Hartford company had everything to gain and nothing to lose by forcing a trial of the cases in question, in the hope of being able to settle with the plaintiffs therein for an amount less than $50,000. This is clearly indicative of the willingness on the part of Hartford to gamble with the insured's money in an attempt to save its own. It appears that during the trial of the cases, counsel for Vanderbilt did not seek to rely upon the legal principal decided in the case of Vanderbilt University v. Henderson, but allowed an unconditional judgment to be entered. The reason for this action does not appear, but it could possibly have been part of defendant's strategy not to reveal the amount of insurance carried, in the hope that the jury would return a verdict for a lesser sum. This is clearly indicative of a willingness and plan to gamble with the assured's money.

It definitely appears from an unbiased appraisal of all of the facts in the case that defendant was guilty of bad faith in refusing to settle plaintiff's liability for a reasonable sum at the time it had the opportunity to do so, and the plaintiff herein is entitled to recover. Noshey v. American Automobile Insurance Co., 6 Cir., 68 F.2d 808; American Fire & Casualty Co. v.

Roberts, 6 Cir., 186 F.2d 921; Southern Fire & Casualty Co. v. Norris, Tenn.App., 250 S.W.2d 785.

Counsel may file proposed findings and conclusions in accord with this opinion.