**Hooper WEBB**

v.

**BLOUNT MEMORIAL HOSPITAL.**

**Civ. No. 4157.**

United States District Court
E. D. Tennessee, N. D.

June 29, 1961.

Joseph J. Levitt, Jr., Knoxville, Tenn., for plaintiff.

Joe C. Gamble, Maryville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

On November 7, 1959, plaintiff, Hooper Webb, a resident of Florida, was a patient in the defendant, Blount Memorial Hospital, at Maryville, Tennessee, recovering from an operation for a fracture of his femur, and while in that condition he was placed in an alleged defective wheelchair by an orderly of the hospital. The wheelchair collapsed and as a result his injured limb suddenly dropped towards the floor causing one of the pins which had been placed in the broken bone to slip from its original position, which necessitated another operation.

Plaintiff charged that the defendant was negligent in furnishing him a defective chair, and its agent was negligent in the manner of setting up the chair.

Defendant denied all charges of negligence and as an affirmative defense asserted that the hospital is owned by Blount County, and is operated as an eleemosynary institution by a corpora-

tion formed at the instance of Blount County and operated under the direct control of Blount County, and is immune from liability for the negligence of its agents and servants.

On June 16, 1961, defendant moved for a summary judgment. The basis of the motion was that defendant is immune from liability for tort. In support of the motion, a stipulation was filed.

An order was entered on June 19 overruling the motion without prejudice to the defendant to renew it during the trial or subsequent thereto.

A trial was had to the Court and jury on June 19, 1961, which resulted in an award in favor of the plaintiff in the amount of $5,000.

The sole issue submitted to the jury was whether the defendant was guilty of any act of negligence that proximately caused the accident and resulting injuries.

Defendant has moved for a judgment in its favor notwithstanding the verdict of the jury based upon the same legal ground contained in its motion for summary judgment.

Thus, again is presented the legal question of whether a hospital owned by Blount County, a subdivision of the State of Tennessee, and operated as an eleemosynary institution, can be held liable for the negligence of the officers, agents and servants of the hospital.

The stipulation shows that Blount County purchased the land on which the hospital was built on June 4, 1945; that the first unit of the hospital was built by Blount County by money obtained from public subscription, from the Federal Government under the Hill-Burton Act, 42 U.S.C.A. § 291 et seq., and the issuance and sale of general obligation bonds of Blount County. That subsequent additions to the hospital were built by the county by money raised in a similar manner and that the hospital was owned by Blount County at the time of the accident. That before the first unit was completed, Blount County, through its Quarterly County Court, authorized the application to the State of Tennessee for a charter of incorporation for the purpose of operating a non-profit hospital for the county, and the charter was issued under the name of Blount County Memorial Hospital, Incorporated, and the corporation was organized and has been operating a hospital through a board of directors, consisting of nine persons who are residents of Blount County.

That under an agreement with the City of Maryville and the City of Alcoa, both of which are municipal corporations of Blount County, for the first six years of the operation of the hospital, the county and the two cities contributed money annually to the corporation in an agreed proportion to cover the deficit which it had anticipated would occur and which did, in fact, occur, and these contributions continued until the hospital became self-supporting; that regular reports are made by the directors to the Quarterly County Court of Blount County, as well as yearly audits of the corporation.

That by virtue of the resolution of the Quarterly County Court, the charter of incorporation of Blount County Memorial Hospital provides for nine directors to be elected, four by the Quarterly County Court, two by the City of Alcoa, two by the City of Maryville, and one by Maryville College, an eleemosynary corporation; that said directors have been elected in this manner since the organization of the corporation; that the directors serve without compensation; that no part of the income from the operation of said hospital is received by any person or group of persons except the personnel employed by the corporation to operate the hospital; that the charges made by the hospital are set at an amount to operate on a sound financial basis, without profit. That at the time of the accident, three members of the Quarterly County Court were members of the board of directors of the hospital.

The question of whether a state, or any of its political subdivisons such as counties and cities, who operate hospitals, is liable to patients or third parties, has been before the courts of the

states many times in various phases. The subject is one upon which the annotators and law journal authors have written extensively.

The great majority of courts holds that the property of hospitals that operate upon a non-profit basis may not be used for the payment of judgments recovered against the hospital for the negligence of their employees. Professor Scott has summarized the reasons given by the courts in reaching such conclusion in a Harvard Law Review article which was republished in Vol. 17 of the Tennessee Law Review, beginning at page 838. The three reasons, as stated by Professor Scott, are: (1) That property devoted to charitable objects should not be diverted from those objects by paying claims of injured persons. This reason is sometimes referred to as a trust fund theory. (2) Another theory is that a person who receives services from a hospital impliedly waives any claim against the hospital for injuries. (3) The third and last reason is based upon the premise that the doctrine of respondeat superior is not applicable to charitable institutions.

Ordinarily, the United States and the several states are immune from suit unless their consent is obtained. Consent is often given for suits against government corporations.

There is a distinction between immunity from suit and immunity from liability which has not always been made clear by the courts when dealing with hospital cases. The question of immunity from tort liability can arise only where the state, or its political subdivision, is subject to suit. The rule is based upon the maxim that: "The king can do no wrong."

In determining the question of liability against the state, or its subdivision, for negligence of its agents in the operation of a hospital, the majority of the courts makes the question of liability or non-liability depend upon whether the operation was governmental or proprietary. If governmental, there is immunity, but if proprietary, there is no immunity. In some instances, presumably in order to avoid harsh results, the courts have been liberal in construing functions of counties and cities as being proprietary. Hence, the standards fixed by the courts in determining whether the operation was governmental or proprietary, are not uniform. The great majority of the cases holds that if the hospital is a non-profit operation, it is engaged in a governmental function and is immune from liability for the negligence of its agents. 25 A.L.R.2d 205 et seq. The duty of the county to conserve the health of its citizens is governmental.

In the case of Knox County Tuberculosis Sanitarium, Inc. v. Moss, 1927, 5 Tenn.App. 589, it was held that the hospital was not liable for damages for injuries sustained by plaintiff while riding on one of the trucks of the hospital due to the negligence of the operator of the truck because it was shown that the hospital was operating purely as a charitable organization. In that case, the Court stated:

"Charities in this State are given immunity from liability growing out of their negligent acts upon the trust fund theory, which is a doctrine well established in this State. And when it is shown that all of the property is being devoted for strictly charitable purposes, and especially when the support of the institution is derived from free donations, then it is the policy of the law to grant immunity, for otherwise, the City of Knoxville, nor Knox County, and we might add the Community Chest, would not donate funds to pay judgments granted guests who climb the institution's trucks while being driven by paid drivers. Central Hospital [for Insane] v. Adams, 134 Tenn. 429, 183 S.W. 1032 [L.R.A.1916E]; Gamble v. Vanderbilt University, 138 Tenn. 616, 200 S.W. 510 [L.R.A.1918C, 875]." 5 Tenn.App. at page 591.

In Vanderbilt University v. Henderson, 1939, 23 Tenn.App. 135, 127 S.W.2d

284, Vanderbilt, a non-profit corporation, was held liable for injuries sustained by plaintiff while a patient in the hospital operated by the University. One of the defenses presented by Vanderbilt was that it was a charitable institution and that the plaintiff was a recipient of the charity. The Court stated that it is generally held that a charitable institution is not liable for the negligence of its agents and servants, citing Abston v. Waldon Academy, 118 Tenn. 24, 102 S.W. 351, 11 L.R.A.,N.S., 1179, and Scott v. Burton, 173 Tenn. 147. 114 S.W.2d 956; that the rule of non-liability of a charitable institution is not changed by the fact that it carries liability insurance to protect it against liability, citing McLeod v. St. Thomas Hospital, 170 Tenn. 423, 472, 95 S.W.2d 917. "But," said the court, "we think that in this State this rule of non-liability extends no further than the protection of the trust property of the charitable institution from being diverted from the purposes of the charity to the satisfaction of a tort liability." 23 Tenn.App. at page 139, 127 S.W.2d at page 286.

The Court stated further that when the institution has other property than that devoted to charitable purposes, it may be held liable for the negligence of its servants, and such other property taken to satisfy the judgment, citing Gamble v. Vanderbilt University, 138 Tenn. 616, 200 S.W. 510, L.R.A.1918C, 875; Lincoln Memorial University v. Sutton, 163 Tenn. 298, 43 S.W.2d 195. A charitable institution may be held for damages for the commission of a nuisance and its trust property may be levied upon to satisfy the judgment, citing Love v. Nashville Agr. & Normal Institute, 146 Tenn. 550, 243 S.W. 304, 23 A.L.R. 887. The Court stated further that immunity afforded a charitable institution in Tennessee goes no further than the protection of its trust funds to satisfy the judgment, citing McLeod v. St. Thomas Hospital, 170 Tenn. 423, 95 S.W.2d 917.

After citing a number of Tennessee cases, the Court stated:

"This, we think, is a recognition that a charitable institution is liable for a tort of its agent and may be pursued to judgment; but that the institution's trust property cannot be taken to satisfy such judgment; and that where such institution has liability insurance, such insurance is not trust property of the institution and may be appropriated to the satisfaction of such judgment." 23 Tenn.App. at page 140, 127 S.W.2d at page 287.

Counsel for the defendant advised the Court during the pretrial that the accident was not covered by liability insurance as the hospital did not carry such insurance.

Abston v. Waldon Academy, 1906, 118 Tenn. 24, 102 S.W. 351, 11 L.R.A.,N.S., 1179, referred to in the above Court of Appeals case, involved a claim of a student of Central Tennessee Methodist Episcopal College, who was injured in a fire that occurred in one of the buildings of the school. The Court held that since the school was operated for charitable purposes, there could be no liability in the case for negligence of its agents and servants, citing in support of its holding the old English case of Feoffees of Heriot's Hospital v. Ross (House of Lords Cases), 12 Clark & Finnelly, 507.

Gamble v. Vanderbilt University, 1917, 138 Tenn. 616, 200 S.W. 510, L.R.A. 1918C, 875, involved an action against Vanderbilt University and its executive committee to recover damages for injuries to plaintiff's intestate caused by the falling of an elevator in an office building owned and operated by the University. The question in this case was whether the University, a charitable corporation, was exempt from liability for the tort committed by its servants and agents. The proof showed that the building where plaintiff's intestate was hurt was operated by the University for profit. The Court overruled the action of the trial court in sustaining the demurrer of the

University to the declaration upon the ground that the University was immune from liability. The Court, in overruling the demurrer, expressly stated that it did not mean to hold that any of the trust property of the University could be levied upon to satisfy any judgment that might be obtained.

Wallwork v. City of Nashville, 1922, 147 Tenn. 681, 251 S.W. 775, involved a suit of a patient of the hospital which was operated by the City of Nashville to recover damages for injuries sustained while in the hospital. In the course of the opinion, the Court stated that it was conceded that a hospital created and operated for exclusive governmental purposes and under the exclusive control of a city is not liable for injuries to a patient caused by the negligence of its employees. It was contended by the plaintiff that because the hospital operated one of its wings for pay and since plaintiff paid for a part of the services rendered to her, the hospital was liable for her injuries. The Court held that the hospital was immune from liability because it was engaged in a governmental function.

In Lincoln Memorial University v. Sutton, 1931, 163 Tenn. 298, 43 S.W.2d 195, the Court held that Lincoln Memorial University, an incorporated educational institution which owned extensive real estate, including a water plant, one-fourth of the water from such plant being distributed to the University and three-fourths sold to Cumberland Gap and vicinity, was subject to suit under the Workmen's Compensation Act. The Court stated:

"This court recognizes the so-called trust theory and holds that in ordinary cases a charitable corporation is not liable in tort for the negligence of its servants. Abston v. Waldon Academy, 118 Tenn. 24 [102 S.W. 351]. * * * Wallwork v. City of Nashville, 147 Tenn. 681 [251 S.W. 775]. The idea is that the tolerance of such liabilities might eventuate in the destruction of the charity and discourage donors, to the detriment of the public welfare." 163 Tenn. at pages 301, 302, 43 S.W.2d at page 196.

The Court based its decision upon the fact that the water works project was operated by the University for profit, citing Gamble v. Vanderbilt University, supra, to support its conclusion.

Rogers v. Butler, 1935, 170 Tenn. 125, 92 S.W.2d 414, involved two suits instituted by a minor child and her father against a school bus driver and his employer, Hamilton County, to recover damages for injuries sustained by the child in a fall from a school bus. The Court held that the county was subject to suit but that satisfaction of the judgment against the county could only be obtained to the extent of the insurance policies carried by the county.

The Court held in the case of McLeod v. St. Thomas Hospital, 1936, 170 Tenn. 423, 95 S.W.2d 917, that the principal exempting charitable institutions from liability for the negligence of its agents and servants "is not immunity from suit, not nonliability for a tort, but that the protection actually given is to the trust funds themselves. It is a recognition that such funds cannot be seized upon by execution, nor appropriated to the satisfaction of a tort liability. And certainly it is no defense to a tort action, that the defendant has no property subject to execution." 170 Tenn. at pages 429, 430, 95 S.W.2d at page 919.

Lane v. City of Knoxville, 1936, 170 Tenn. 482, 96 S.W.2d 769, involved a claim by the son of Gus Lane who died in the hospital operated by the City of Knoxville for negligence upon the part of the servants and agents of the hospital in performing an autopsy on his father without consent from the family. The Court held that the city was immune from liability for the negligence of its employees in conducting a municipal hospital, and that the plaintiff could not recover.

In Baptist Memorial Hospital v. Couillens, 1940, 176 Tenn. 300, 140 S.W.2d 1088, a pay patient sued the hospital for burns received as a result of the alleged

negligence of its attendants. The Court held that since the hospital owned property of large value subject to taxation and was not used exclusively for charitable purposes, it was not immune from suit or from execution under a judgment for tort against the property not used for charitable purposes. The Court expressly stated, however, that the holding left "unimpaired, in principle, the rule that a beneficiary of a charitable trust can not subject property directly devoted to the carrying out of the trust, to the payment of damages resulting from negligence." 176 Tenn. at page 312, 140 S.W. 2d at page 1093.

Anderson v. Armstrong, 1943, 180 Tenn. 56, 171 S.W.2d 401, presented the question of whether a judgment may be had against an organization administering a charitable trust when it does not appear that the property was used exclusively in the business of the trust from which the judgment can be satisfied.

The Court, after stating the rule that property used exclusively for carrying out charitable trust purposes is immune from execution under judgment for tort, but property not so used is subject to such judgment, concluded that:

"Should plaintiff recover judgment on the trial of this case on its merits, the judgment will be restricted in its scope so that execution thereunder can only be levied on property of defendant not directly and exclusively used in the work of the trust, that is property subject to taxation." 180 Tenn. at page 61, 171 S.W.2d at page 402.

The comparatively recent case of McMahon v. Baroness Erlanger Hospital, 1957, 43 Tenn.App. 128, 306 S.W.2d 41, involved many facts similar to the facts involved in the case under consideration. In that case, plaintiff sued to recover for injuries sustained in the hospital claimed to have been sustained as a result of the negligence of one of its' nurses. The hospital was owned and operated by Hamilton County and the City of Chattanooga through a board of trustees. The trial court sustained a motion for peremptory instructions on the ground of governmental immunity. Plaintiff was a pay patient. The Court of Appeals, in affirming the action of the trial court, stated that the record presented two major questions. The first one was the only one that is pertinent to the matters involved in this suit.

"(1) Was the operation of this hospital a governmental function carrying with it an immunity from liability of the torts of its agents and servants?" 43 Tenn.App. at page 134, 306 S.W.2d at page 44.

The Court in answering this issue in the affirmative cited the cases of Wallwork v. City of Nashville, 147 Tenn. 681, 251 S.W.2d 775 and Lane v. City of Knoxville, 170 Tenn. 482, 96 S.W.2d 769, both of which have been previously referred to. The Court then stated that:

"There is some criticism of this rule of government immunity. See Prosser on Torts, 2d Ed., sec. 109, at pages 774 et seq., but it would be fruitless to go into this or cases outside of Tennessee for the very simple reason that the Wallwork and Lane cases, supra, settled this issue in this state. And in spite of a growing trend otherwise, these holdings are in accord with the great weight of authority, even though they may work an injustice in individual cases." 43 Tenn.App. at page 136, 306 S.W.2d at page 45.

See 38 Am.Jur.—Municipal Corporations —Sec. 573, pp. 265, 266, 267.

The Court stated that the charter of the City of Chattanooga empowered it to sue and to be sued, but that this was not a waiver of governmental immunity as to torts committed in pursuance of the governmental acts.

A certified copy of defendant's charter shows that it is empowered to sue and to be sued, but as stated by Judge Hale in the McMahon case, this language is not a waiver of governmental immunity for negligence committed in pursuance of governmental acts. The Court pointed out that the Erlanger Hospital

was not operated for profit, but at a loss to the City of Chattanooga and Hamilton County, which were required to absorb an annual operating deficit. It is true that about 87% of its operating cost was derived from private pay patients and the operation of Coca-Cola vending machines, the tea room, etc., but that these factors would not deprive it of governmental immunity. The Court then stated:

"As we see it, this case fits squarely within the framework of the Wallwork case and that unless it is overruled by the Supreme Court or unless the legislative branch of the government does away with this doctrine of governmental immunity, counties and cities are not and will not be liable for the torts of their servants in the operation of nonprofit hospitals." 43 Tenn.App. at page 137, 306 S.W.2d at page 45.

The Court, in the discussion of the other issue involved in the case which involved a certain kind of insurance carried by the hospital, but which, as aforestated, is not material to the consideration of this case as the defendant did not carry liability insurance, stated:

"So we will proceed on the assumption that if there was insurance coverage against malpractice, this operated as a waiver of immunity." 43 Tenn.App. at page 137, 306 S.W.2d at page 45.

The decision in the Erlanger Hospital case rules this case.

The defendant was engaged in a governmental function at the time plaintiff sustained his injury and is, therefore, not liable to him for the alleged negligence of its officers, agents and servants. The facts which are stipulated show that defendant was engaged exclusively in charitable operations at the time plaintiff was injured and, under the Tennessee rule as contained in the cases hereinbefore cited, is not liable for the alleged negligence of its officers and employees. See also 49 A.L.R. 379.

The question of whether this rule, which undoubtedly causes harsh results in many instances, is just or unjust is not for this Court, but for the legislature.

Defendant's motion for judgment notwithstanding the verdict must be sustained.

Let an order be presented in accordance with the views here expressed.